JUDGE McKENNA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

VIRGINIA MILANES, OMAR MIGUEL FARFAN,
MANUEL ALBERTO, MARTINEZ, ANDRES
GIOVANNY SANCHEZ, NANCY CASTRO, and
MARGOTH PEREZ DE CHALAMPA, on behalf of
themselves and all other similarly situated individuals,

08 CV 2354

                              Plaintiffs,

          -against-

MICHAEL CHERTOFF, in his official capacity as
Secretary of the Department of Homeland Security,
EMILIO GONZALEZ, in his official capacity as
Director of the United States Citizenship and
Immigration Services, ANDREA QUARANTILLO,
in her official capacity as District Director of the
New York City District of the United States
Citizenship and Immigration Services,
MICHAEL B. MUKASEY, in his official capacity as
Attorney General of the United States, and
ROBERT S. MUELLER, III, in his official capacity as
Director of the Federal Bureau of Investigation,

                              Defendants.
----------------------------------------------------------------X

08 Civ. _____

(ECF CASE)

**COMPLAINT**

**PRELIMINARY STATEMENT**

1.      The United States government is failing to fulfill one of its core

responsibilities: adjudicating applications for citizenship in a timely manner. Hundreds

of thousands of naturalization applicants are waiting far longer than the law permits,

many of them for as many as two to three years. This failure imposes severe hardships

and irreparable harm on the applicants who are forced to wait. They cannot vote. They

are deemed ineligible for numerous important benefits and jobs. They cannot sponsor

their immediate relatives for citizenship. They cannot travel freely.

2.      Named Plaintiffs, all lawful residents in the United States for the past five

to twenty-five years, have submitted complete applications for naturalization that have

not been adjudicated within a reasonable time.  Some have been waiting for more than

three years for a decision, despite repeated requests for adjudication.  All of them have

suffered egregious harm as a result of the delay.  For example, OMAR MIGUEL

FARFAN, a decorated veteran of the United States Navy, cannot get a United States

Government job because he is not a citizen.  He has already waited over three years.

MANUEL ALBERTO MARTINEZ, who has waited over two years, is unable to apply

for a visa for his elderly mother to leave Mexico and join him in the United States.

3.    With the presidential election less than nine months away, these delays

take on particular significance, as hundreds of thousands of applicants, many of them

Latino, could wrongfully be denied the ability to vote and participate in determining the

future of their country.  During this time of widespread anti-immigrant and anti-Latino

sentiment, Latinos across the country have sought citizenship, in part, so as to be able to

vote in this year's elections.  They are being denied this opportunity because of

Defendants' delays.

4.    Plaintiffs bring this class action on behalf of themselves and a proposed

class of similarly situated lawful permanent residents residing in the counties served by

the New York City District Office of the United States Citizenship and Immigration

Services (hereinafter "USCIS"), who have submitted or will submit applications to be

naturalized as United States citizens, and whose applications have not been or will not be

adjudicated within 180 days of the date of submission, and on behalf of a sub-class

composed of those members of the class who reside in the Southern District of New York

and whose applications have not been or will not be adjudicated within 120 days of the

date of their initial examinations.

5.    Plaintiffs bring this class action for declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 551(13), 706(1) and 553, and the Immigration and Nationality Act § 336(b), codified at 8 U.S.C. § 1447(b), challenging the failure of the United States government Defendants to meet their clear obligations to adjudicate applications for naturalization in a timely manner.

6.    Plaintiffs challenge the failure of Defendants MICHAEL CHERTOFF, EMILIO GONZALEZ, ANDREA QUARANTILLO, MICHAEL B. MUKASEY, and ROBERT S. MUELLER, III (hereinafter "all Defendants") to take all steps necessary to adjudicate proposed class members' naturalization applications within a reasonable time in violation of 5 U.S.C. § 555(b).

7.    Plaintiffs challenge the failure of Defendants CHERTOFF, GONZALEZ, and QUARANTILLO (hereinafter "USCIS Defendants") and Defendant MUKASEY to adjudicate proposed class members' naturalization applications (1) within 120 days of their initial examinations in violation of 8 C.F.R. § 335.3 and 8 U.S.C. § 1447(b), and (2) within a reasonable time in violation of 5 U.S.C. § 555(b).

8.    Plaintiffs challenge the failure of Defendants MUKASEY and MUELLER to complete within a reasonable time the name checks conducted by the Federal Bureau of Investigation ("FBI") in connection with the adjudication of proposed class members' naturalization applications in violation of 5 U.S.C. § 555(b).

9.    Plaintiffs challenge the failure of Defendants CHERTOFF and GONZALEZ to publish a proposed regulation and provide a notice-and-comment period prior to implementing a policy or practice of requiring an FBI name check to be completed before adjudicating a naturalization application in violation of 5 U.S.C. § 553.

10.    As a result of all Defendants' failure to take all steps necessary to adjudicate Plaintiffs' naturalization applications within a reasonable time as required by federal law, and within 120 days of their initial examinations, Plaintiffs have been prevented from receiving the many substantial and unique benefits of citizenship, including the right to vote, the right to obtain United States passports, the right to file visa petitions for immediate relatives as United States citizens, the protection of the United States government when outside the United States, and the right to life-sustaining federal benefits.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 701 *et seq.* (Administrative Procedure Act), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

12.    This Court also has jurisdiction over claims brought by Plaintiff SANCHEZ, as well as members of the proposed sub-class he represents, pursuant to 8 U.S.C. § 1447(b), which grants jurisdiction to the United States district court in the district in which an individual applying for naturalization resides if the individual's application for naturalization has not resulted in a determination within 120 days after the date on which an initial examination is conducted pursuant to 8 U.S.C. § 1446.

13.    Venue properly lies with this district pursuant to 28 U.S.C. § 1391 (b) and (e) as certain members of the proposed class reside within this judicial district and a significant part of the activities complained of occurred within this judicial district.

14.    Venue is also proper for Plaintiff SANCHEZ, as well as members of the proposed sub-class they represent, pursuant to 8 U.S.C. § 1447(b), which provides that a

petition for review of a naturalization application shall be filed in the district in which the applicant resides.

## PARTIES

### Plaintiffs

15.    Plaintiff VIRGINIA MILANES resides in the Bronx, New York, and has been a lawful permanent resident of the United States since on or about June 19, 2003. Plaintiff MILANES submitted her application for naturalization to USCIS on or about August 16, 2006, and was fingerprinted in connection with her naturalization application on September 5, 2006. At the time of the filing of this Complaint, Plaintiff Milanes has yet to receive an appointment for her naturalization examination, although it has been 568 days (over 18 months) since she submitted her naturalization application to USCIS.

16.    Plaintiff OMAR MIGUEL FARFAN resides in Islandia, New York, and has been a lawful permanent resident of the United States since on or about March 16, 1993. Plaintiff FARFAN submitted an application for naturalization to USCIS on or about April 29, 2004, and had his naturalization examination on August 9, 2005. At the time of the filing of this Complaint, Plaintiff FARFAN's naturalization application has not yet been adjudicated, although it has been 1,407 days (over 46 months) since the date he submitted his naturalization application and 940 days (over 30 months) since the date of his examination.

17.    Plaintiff MANUEL ALBERTO MARTINEZ resides in Brooklyn, New York, and has been a lawful permanent resident of the United States since on or about April 20, 2001. Plaintiff MARTINEZ submitted his application for naturalization to USCIS on or about January 30, 2006, and had his naturalization examination on May 10, 2006. At the time of the filing of this Complaint, his application has not yet been

adjudicated, although it has been 766 days (over 25 months) since the date he submitted

his naturalization application and 666 days (over 21 months) since the date of his

examination.

18.    Plaintiff ANDRES GIOVANNY SANCHEZ resides in New York, New

York, and has been a lawful permanent resident of the United States since on or about

November 28, 1999.  Plaintiff SANCHEZ submitted his application for naturalization to

USCIS on or about December 20, 2004, and had his naturalization examination on

October 13, 2005.  At the time of the filing of this Complaint, Plaintiff SANCHEZ's

application for naturalization has not yet been adjudicated, although it has been 1,172

days (over 38 months) since the date he submitted his naturalization application and 875

days (over 28 months) since the date of his examination.

19.    Plaintiff NANCY CASTRO resides in the Bronx, New York, and has been

a lawful permanent resident of the United States since on or about January 28, 1983.

Plaintiff CASTRO submitted her application for naturalization to USCIS on or about

August 24, 2006, and was fingerprinted in connection with her naturalization application

during September of 2006.  Plaintiff CASTRO then received notification from USCIS

that her naturalization examination was scheduled for August 7, 2007, but shortly

thereafter received further notification stating that her examination appointment was

cancelled, and that she would be notified of her new examination time.  At the time of the

filing of this Complaint, Plaintiff CASTRO has yet to receive a rescheduled appointment

for her naturalization examination, even though it has been 560 days (over 18 months)

since she submitted her naturalization application to USCIS.

20.    Plaintiff MARGOTH PEREZ De CHALAMPA resides in Queens, New

York, and has been a lawful permanent resident of the United States since on or about

July 13, 2002.  Plaintiff PEREZ De CHALAMPA submitted her application for

naturalization to USCIS on or about July 23, 2007, and was fingerprinted in connection

with her naturalization application on September 28, 2007.  At the time of the filing of

this Complaint, Plaintiff PEREZ De CHALAMPA has yet to receive an appointment for

her naturalization examination, although it has been 227 days (over 7 months) since she

submitted her naturalization application to USCIS.

**Defendants**

21.    Defendant MICHAEL CHERTOFF is the Secretary of the Department of

Homeland Security ("DHS").  As such, he is responsible for, *inter alia*, administering

USCIS and assuring the implementation and enforcement of the Immigration and

Nationality Act.

22.    Defendant EMILIO GONZALEZ is the Director of USCIS.  As such, he is

responsible for, *inter alia*, the administration of immigration benefits and services

including the processing of naturalization applications of immigrants residing in the

United States.

23.    Defendant ANDREA QUARANTILLO is the District Director of the New

York City District Office of USCIS.  As such, she is responsible for, *inter alia*,

administering the immigration laws in the following counties in New York State:  Bronx,

Kings, Nassau, New York, Orange, Putnam, Queens, Richmond, Rockland, Staten Island,

Suffolk, Sullivan, Ulster, and Westchester.

24.    Defendant MICHAEL B. MUKASEY is the Attorney General of the

United States.  As such, he is responsible for, *inter alia,* controlling determination of all

issues of law pertaining to immigration pursuant to 8 U.S.C. § 1103 and has the sole

authority to naturalize citizens of the United States pursuant to 8 U.S.C. § 1421(a).  He

has delegated authority and responsibility to administer all laws pertaining to immigration, naturalization, and nationality to the Director of USCIS. 8 U.S.C. § 1103(a)(1); 8 C.F.R. § 100.2; 6 U.S.C. § 271(b). The Attorney General is the head of the Department of Justice and, as such, is responsible for administering the FBI, which is part of the Department of Justice. 28 U.S.C. § 503; 28 U.S.C. § 531.

25.    Defendant ROBERT S. MUELLER, III is the Director of the FBI. As such he is responsible for, *inter alia*, ensuring that a full criminal background check is completed for each individual applying to be naturalized as a United States citizen. Pub. L. 105-119, tit. I, 111 Stat. 2440, 2448- 49 (1997); 8 C.F.R. § 335.2(b).

## STATUTORY AND REGULATORY SCHEME

26.    Federal immigration law provides immigrants who have been residing in the United States the right to apply and to become United States citizens through a process known as naturalization. 8 U.S.C. § 1421 *et seq.*

27.    The Attorney General has the "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a); Pub. L. No. 101-649, Title IV, 104 Stat. 4978, 5038-48 (Nov. 29, 1990).

28.    The Attorney General has delegated the authority to administer and enforce the Immigration and Nationality Act and all other laws relating to immigration, naturalization, and nationality to the Director of Immigration and Naturalization Service ("INS"). 8 C.F.R. § 100.2(a); 28 C.F.R. § 0.105.

29.    On March 1, 2003, INS ceased to exist and its principal functions were transferred to the newly created USCIS within Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (codified at 6 U.S.C. § 291(a)); 8 U.S.C. § 1103(a)(1). Authority and responsibility to

administer and enforce all laws pertaining to immigration, including the adjudication of naturalization applications, was transferred from the Commissioner of the INS to the Director of USCIS. *See* 6 U.S.C. § 271(b)(2); 8 U.S.C. § 1103(a)(1).

30.    In order to apply for naturalization, an immigrant must be lawfully admitted as a permanent resident of the United States. 8 U.S.C. § 1427(a). An immigrant must generally reside as a lawful permanent resident in the United States for three or five years prior to filing an application for naturalization with USCIS. 8 U.S.C. § 1427(a); 8 U.S.C. § 1445(a), (b); 8 C.F.R. §§ 316.4, 334.1, 334.2.

31.    After receipt of an application for naturalization, USCIS must conduct a background investigation of the applicant. 8 U.S.C. § 1446(a); 8 C.F.R. §§ 335.1, 335.2.

32.    Since 1997, Congress has also required that a complete FBI criminal background investigation be conducted on each applicant for citizenship before USCIS may adjudicate an application. Pub. L. 105-119, Title I, 111 Stat. 2440, 2448-49 (1997).

33.    In March of 1998, INS promulgated a regulation implementing the 1997 law requiring that a complete FBI criminal background investigation be conducted on each applicant for citizenship. 8 C.F.R. § 335.2(b). Pursuant to that regulation, prior to USCIS scheduling an applicant for an examination, the FBI must complete fingerprint and database checks to verify whether or not an applicant has an "administrative or a criminal record." 8 C.F.R. § 335.2(b).

34.    USCIS immigration officers must then conduct the examination of applicants for naturalization. 8 U.S.C. § 1446(a); 8 C.F.R. §§ 335.2, 332.1. In order for a naturalization application to be granted, an immigrant must meet certain requirements, including: a sufficient period of physical presence in the United States; good moral character; and an understanding of the English language and the history and government

of the United States. 8 U.S.C. §§ 1423, 1427(a). The immigration officer must determine whether the application should be granted or denied, with reasons therefore. 8 U.S.C. § 1446(d).

35.    USCIS shall grant naturalization applications if applicants have complied with all requirements for naturalization. 8 C.F.R. § 335.3(a).

36.    If a naturalization application is granted, USCIS must schedule the applicant for a ceremony at which the applicant takes the "oath of renunciation and allegiance" and is sworn in as a citizen of the United States. 8 U.S.C. § 1448(a).

37.    A decision to grant or deny the naturalization application must take place "at the time of the initial examination or within 120-days after the date of the initial examination." 8 C.F.R. § 335.3(a).

38.    If an application for naturalization has not resulted in a determination within 120 days of the date of the applicant's examination, 8 U.S.C. § 1447(b) and its implementing regulation, 8 C.F.R. § 310.5, grant the applicant the right to apply to the United States district court in the district in which he or she resides. Such district court has jurisdiction to either determine the matter *de novo* or remand the matter to USCIS, with appropriate instructions to determine the matter. 8 U.S.C. § 1447(b); 8 C.F.R. § 310.5.

39.    8 U.S.C. § 1571 states that "it is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition." The term "immigration benefit application" means any application or petition to confer, certify, change, adjust, or extend any status granted under the

Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, including naturalization. 8
U.S.C. § 1572.

40.    USCIS has also publicly stated that applications for naturalization should
be adjudicated within six months of the filing of the naturalization application. *See* U.S.
Citizenship and Immigration Services, Questions and Answers: Building an Immigration
Service for the 21st Century, http://www.uscis.gov/files/pressrelease/QABuilding1.pdf
(last visited Mar. 6, 2008).

41.    "The Attorney General shall take such measures as may be necessary to--
(1) reduce the backlog in the processing of immigration benefit applications, with the
objective of the total elimination of the backlog within one year after November 25,
2002; (2) make such other improvements in the processing of immigration benefit
applications as may be necessary to ensure that a backlog does not develop after such
date; and (3) make such improvements in infrastructure as may be necessary to
effectively provide immigration services." 8 U.S.C. § 1573.

42.    The Administrative Procedure Act ("APA") directs agencies to conclude
matters presented to them "within a reasonable time." 5 U.S.C. § 555(b). When an
agency fails to conclude a matter presented to it within a reasonable time, the APA grants
judicial review to "compel agency action unlawfully withheld or unreasonably delayed."
5 U.S.C. § 706(1). "Agency action" is defined by the APA as "the whole or part of an
agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure
to act." 5 U.S.C. § 551(13).

43.    The APA further requires administrative agencies to provide a notice-and-
comment period prior to implementing a substantive rule, including a rule that is a

departure from prior policy and practice and that has a substantial adverse effect upon a large number of those affected.  5 U.S.C. § 553.

44.    The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the government from depriving any person of life, liberty or property without due process of law.  U.S. Const., amend. V.

## CLASS ACTION ALLEGATIONS

45.    Named Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(a) and 23(b)(2), on behalf of themselves and a proposed class of:

> All lawful permanent residents who reside in the counties served by the New York District Office of USCIS and who have submitted or will submit applications for naturalization to USCIS, and whose applications for naturalization have not been or will not be adjudicated by USCIS within 180 days of the date of submission.

46.    The proposed Plaintiff class includes a sub-class of Plaintiffs (hereinafter "Post-Examination Plaintiffs") that consists of:

> All lawful permanent residents who reside within the counties in the Southern District of New York served by the New York District Office of USCIS, and who have submitted or will submit applications for naturalization to USCIS, and whose applications for naturalization have not been or will not be adjudicated by USCIS within 120 days of the date of their initial examination.

47.    This proposed class is so numerous that joinder of all members is impracticable.  Upon information and belief, there are thousands of proposed class members and proposed sub-class members who are similarly situated to the named Plaintiffs.

48.    There are questions of fact and law common to the proposed class that predominate over any questions affecting only the individual named Plaintiffs, including: (1) whether USCIS's actions and omissions, including its failure to adjudicate the naturalization applications of the proposed plaintiff class within 180 days of the date of

submission, violate the INA and implementing regulations and constitute unreasonable delay and unlawful withholding of agency action in violation of the APA and the Due Process Clause of the Fifth Amendment to the United States Constitution; (2) whether the FBI's actions and omissions, including its failure to complete name checks in a timely fashion so as to allow USCIS to adjudicate the naturalization applications of the proposed plaintiff class within 180 days of the date of submission in accordance with the governing timeliness standards, constitute unreasonable delay and unlawful withholding of agency action in violation of the APA; (3) whether USCIS's and the FBI's failure to set deadlines for completing name checks and failure to take all reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class within 180 days of the date of submission in accordance with the governing timeliness standards violate the APA; and (4) whether USCIS's implementation of a policy or practice of requiring an FBI name check to be completed before adjudicating a naturalization application without first publishing a proposed regulation and providing a notice-and-comment period violates the APA.

49.    There are questions of fact and law common to the proposed sub-class that predominate over any questions affecting only the individual named Plaintiffs, including whether USCIS Defendants and Defendant MUKASEY's failure to adjudicate proposed class members' naturalization applications within 120 days of their initial examinations violates 8 C.F.R. § 335.3 and 8 U.S.C. § 1447(b).

50.    The claims of the named Plaintiffs are typical of the claims of the proposed class. The named Plaintiffs, like all class members, are lawful permanent residents who have submitted applications for naturalization, and whose applications USCIS has not adjudicated despite the passage of over 180 days since the date of

submission.  Like all members of the proposed class, the named Plaintiffs bring claims under the APA and under the Due Process Clause of the Fifth Amendment to the United States Constitution against all Defendants.  Plaintiff SANCHEZ, like all members of the proposed sub-class, resides in the Southern District of New York and brings a claim against USCIS Defendants and Defendant MUKASEY because he has not had his naturalization application adjudicated within 120 days of his initial examination.

51.    The named Plaintiffs will adequately and fairly protect the interests of all members of the proposed class, because they have the requisite personal interest in the outcome of this litigation and they have no interest antagonistic to others in the proposed class.

52.    Plaintiff SANCHEZ will fairly and adequately protect the interests of all members of the proposed Post-Examination Plaintiffs sub-class because he seeks relief on behalf of the class as a whole and has no interests antagonistic to other members of the sub-class.

53.    Plaintiffs are represented by the Puerto Rican Legal Defense and Education Fund and the New York Legal Assistance Group, whose attorneys are experienced in class-action litigation generally and specifically litigation concerning the rights of immigrants.

54.    Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

55.    USCIS Defendants and Defendant MUKASEY have a custom and practice of unlawfully withholding and unreasonably delaying the adjudication of proposed class members' applications for naturalization.

56.    USCIS Defendants and Defendant MUKASEY have a custom and practice of failing to adjudicate proposed sub-class members' applications for naturalization within 120 days of their initial examinations.

57.    All Defendants have a custom and practice of failing to take all steps necessary to adjudicate proposed class members' applications for naturalization within a reasonable time.

58.    Defendants MUKASEY and MUELLER have a custom and practice of failing to complete within a reasonable time the FBI name checks performed in connection with USCIS's adjudication of naturalization applications.

59.    Defendants' actions prevent proposed class members from exercising all the rights and privileges of citizenship, including the right to vote.

### Criminal Background Checks

60.    USCIS requests an FBI fingerprint check in connection with every naturalization application.

61.    The FBI fingerprint check reveals any criminal record associated with an applicant's fingerprints.

62.    USCIS conducts both a check of the records in the Department of Homeland Security immigration systems and a check against the U.S. Customs and Border Protection's Treasury Enforcement Communications System ("TECS"),

previously known as the Interagency Border Inspection Systems ("IBIS"), in connection with every naturalization application.

63.    IBIS/TECS is a collection of data from more than 20 federal agencies that includes wants and warrant information, lookout information, and watch-list information.

**FBI Name Checks**

64.    USCIS requests FBI to conduct a name check in connection with every application for naturalization separate and apart from the FBI fingerprint and IBIS/TECS checks.

65.    USCIS will not grant an application for naturalization before FBI completes the applicant's name check and USCIS reviews the results of FBI's name check.

66.    Beginning around November 2002, USCIS and FBI dramatically altered the naturalization application procedure by requiring FBI to review additional files in connection with its name check, including files in which an applicant's name is mentioned merely because he or she was a witness to or reported a crime. Consequently, the number of files that FBI reviews in connection with the name check increased exponentially and significantly delayed the completion of the name check for hundreds of thousands of naturalization applicants. In many cases, it takes FBI several years from the time that FBI receives a name check request before an FBI analyst even looks at the contents of these files.

67.    USCIS has never initiated a notice and comment procedure pursuant to the APA in connection with its requirement that FBI name checks be completed prior to the grant of naturalization applications.

68.     The FBI name check procedures were substantive departures from prior USCIS policy. They imposed new requirements in naturalization procedures that were not based on statute or regulations and they have had substantial adverse effects on applicants for naturalization by causing significant delays in adjudication.

69.     USCIS and FBI instituted the name check procedures without engaging in any meaningful assessment of the value of the information to be obtained from the name checks or the impact that the dramatic alteration of the name check program would have on the adjudication of naturalization applications.

70.     Neither USCIS nor FBI has ever imposed any deadlines for completing FBI name checks for naturalization applicants.

71.     Hundreds of thousands of name checks are currently pending with the FBI name check program, including the names checks of applicants who applied for naturalization in 2002-2003.

**Adverse Effects of the FBI Name Checks**

72.     The imposition of the FBI name checks has significantly delayed the adjudication of naturalization applications.

73.     The imposition of the FBI name checks is of no additional value to national security.

74.     There are currently approximately 140,000 name checks requested by USCIS that have been pending with FBI for more than six months.

75.     USCIS's review of the results of the FBI name checks often contributes to further significant delays in the adjudication of naturalization applications.

76.     USCIS's Ombudsman, and his predecessor the DHS Inspector General, have issued repeated recommendations that USCIS cease requiring name checks on all

naturalization applicants but only perform them in a limited number of cases selected in a risk based approach. *See* Citizenship and Immigration Services Ombudsman Annual Report 2006 Report (hereinafter "2006 Report") at 26, http://www.dhs.gov/xlibrary/assets/CISOmbudsman_AnnualReport_2006.pdf (last visited Mar. 6, 2008).

77.     Naturalization applicants do not pose a special danger or threat to national security.

78.     Lawful Permanent Residents (LPRs) who apply for naturalization have already undergone a full criminal background check and in most cases an FBI name check prior to their application for naturalization.

79.     USCIS has never ascertained the total number of naturalization applications that USCIS has denied based on derogatory information obtained by the agency exclusively by means of the FBI name checks.

80.     In most cases an applicant for naturalization is living in the United States while the application for naturalization is pending.

**The Increase in Naturalization Application Fees**

81.     The fee charged by USCIS for naturalization applications prior to July 2007 was not adequate to cover the costs of processing the applications, resulting in widespread delays.

82.     In July 2007, USCIS increased the fee it charges for the processing of naturalization applications by approximately 80 percent. This was the first increase in the fee, except for a cost-of-living increase in 2005, since 1998.

83.     USCIS Defendants last conducted a comprehensive review, evaluating the adequacy of the naturalization application fee, in 1998.

84.    When USCIS Defendants raised the naturalization application fee in 2007, they failed to take reasonable steps to accommodate the surge in naturalization applications prior to the fee increase, even though prior experience indicated that such a surge would occur.

85.    In November, 2007, CIS made a public announcement that naturalization applications filed after June 1, 2007 would take approximately 16 to 18 months to process as a result of the huge number of applications filed during the summer of 2007.

86.    As a result of the Defendants' policies, practices, actions, and omissions described herein, members of the proposed plaintiff class have suffered and will suffer injury, in that they are denied various rights and benefits of U.S. citizenship, including being able to:

    a.    vote in local, state, and national elections;

    b.    sponsor immediate relatives living abroad for permanent residence in the United States;

    c.    travel freely outside of the United States as they do not have U.S. passports and the guarantee of re-admission into the country upon their return; and

    d.    apply for certain types of employment, educational grants and loans, and other benefits that are limited to U.S. citizens.

## FACTS OF NAMED PLAINTIFFS

### Plaintiff VIRGINIA MILANES

87.    Plaintiff VIRGINIA MILANES immigrated to the United States as a lawful permanent resident on or about June 19, 2003, with her husband William Milanes. Ms. MILANES's husband is a United States citizen.

88.    Ms. MILANES filed her naturalization application on or about August 16, 2006, and was fingerprinted in connection with her application for naturalization on September 5, 2006.

89.    USCIS has still not scheduled Ms. MILANES for a naturalization examination and/or interview.

90.    Ms. MILANES has made numerous efforts to expedite the adjudication of her naturalization application.  On several occasions, Ms. MILANES contacted the office of United States Congressman Jose Serrano concerning the status of her naturalization application.

91.    Congressman Serrano's office sent an email inquiry to USCIS's Congressional Unit in August of 2007.  Angie Johnson of the USCIS's Vermont Service Center Congressional Unit stated the following in an email response dated August 10, 2007:

> A hearing can not be scheduled until all of the security checks are cleared.  Virginia is currently pending name and date of birth checks.  The processing of your case has been delayed.  A check of your records establishes that your case is not yet ready for decision as the required security checks remain pending.  Until the security checks have been completed, we can not move forward on your case.  We will make every effort to make a decision on this case as soon as the security checks are complete.  If you do not receive a decision or other notice of action from us within 6 months of this letter, please contact us.

92.    Congressman Serrano's office again contacted USCIS's Congressional Unit on Ms. MILANES's behalf in November of 2007 and received a similar email response.

93.    In February of 2008, Congressman Serrano's office contacted USCIS's Congressional Unit via telephone concerning the status of Ms. MILANES's application and was told that the security checks were not yet complete.

94.     Ms. MILANES still has not received any notification of when her naturalization examination and interview will be scheduled, although it has been 568 days (over 18 months) since she submitted her naturalization application to USCIS.

95.     Ms. MILANES suffers greatly from the delay in the processing of her naturalization application.  Ms. MILANES's husband William, her son Ramon, and her grandchildren are all citizens of the United States.  Ms. MILANES wishes she could be a citizen of the same country as her family.  Moreover, Ms. MILANES longs to be able to vote in this fall's presidential election and participate fully in the democratic process of the United States.

**Plaintiff OMAR MIGUEL FARFAN**

96.     Plaintiff OMAR MIGUEL FARFAN immigrated to the United States in 1992 as a teenager with his family, and became a lawful permanent resident on March 16, 1993.

97.     Mr. FARFAN submitted his first application for naturalization in the late 1990s, after about five years of lawful permanent residency.  At that time, Mr. FARFAN was engaged in active duty in the United States Navy.  During 2002 or 2003, after Mr. FARFAN was honorably discharged from service, INS informed him that his file was lost and that he would need to submit a new application for naturalization.

98.     Mr. FARFAN submitted his *second* application for naturalization to USCIS on April 29, 2004, after twelve years of lawful permanent residency.  On August 9, 2005, Mr. FARFAN was interviewed and examined by a Service Officer at USCIS in connection with his naturalization application.

99.    Upon the completion of his interview, Mr. FARFAN was informed that he had passed the examination and had satisfied all of the naturalization requirements. However, he did not receive an invitation to a naturalization oath ceremony.

100.    Thereafter, Mr. FARFAN made numerous attempts to inquire into the status of his case. Mr. FARFAN telephoned USCIS's customer service line at least twice to inquire about the status of his application. Additionally, Mr. FARFAN traveled to the USCIS offices to make in-person inquiries. On each occasion, Mr. FARFAN was told that his application was pending because background checks remained outstanding.

101.    In mid-2007, Mr. FARFAN hired a private immigration lawyer to attempt to get his naturalization application adjudicated. His lawyer submitted an inquiry to USCIS on November 28, 2007. In response, USCIS replied that Mr. FARFAN's application "is currently pending security background checks."

102.    Around that same time, Mr. FARFAN also contacted his United States Congressman requesting that he submit an inquiry to USCIS on Mr. FARFAN's behalf. USCIS also replied to Mr. FARFAN's Congressman that Mr. FARFAN's application was "pending security background checks."

103.    Mr. FARFAN suffers greatly due to the extreme delay in the adjudication of his naturalization application. Having served several years in the United States Armed Forces, and having been decorated with honors and awards, Mr. FARFAN wants very much to be citizen of the country he has served to protect. Moreover, Mr. FARFAN wants greatly to be able to vote and participate meaningfully in civic affairs. Mr. FARFAN feels that this year's presidential election is an especially important opportunity and wants to be a part of selecting the leadership of the country in which he resides. Mr. FARFAN is currently enrolled in college, and additionally works full-time to support his

two children, both of whom are United States citizens. Mr. FARFAN would like to seek employment in the federal government, but cannot because he is not a citizen.

104.    At the time of the filing of this Complaint, Mr. FARFAN's naturalization application has not been adjudicated.  It has been 1,407 days (over 46 months) since the date he submitted his naturalization application and 940 days (over 30 months) since the date of his examination.

**Plaintiff MANUEL ALBERTO MARTINEZ**

105.    Plaintiff MANUEL ALBERTO MARTINEZ became a lawful permanent resident of the United States on April 20, 2001.

106.    Mr. MARTINEZ submitted his application for naturalization to USCIS on January 30, 2006, after almost five years of lawful permanent residency.  Mr. MARTINEZ was fingerprinted in connection with his application for naturalization on February 24, 2006.

107.    On May 10, 2006, Mr. MARTINEZ was interviewed and examined by a Service Officer at the Garden City location of the New York City District of USCIS in connection with his naturalization application.

108.    Upon the completion of the examination, Mr. MARTINEZ was informed that he had passed the examination and had satisfied the naturalization requirements. However, he did not receive an invitation to a naturalization ceremony.

109.    USCIS never initiated contact with Mr. MARTINEZ again.  Since his examination, Mr. MARTINEZ has made several attempts to inquire about the status of his application. He made numerous telephone calls to the USCIS customer service line requesting the status of his application. On each occasion, he was informed that his case was "pending security checks."

110.    Moreover, since Mr. MARTINEZ's examination, his attorney has submitted numerous written inquiries to USCIS, the last of such inquiries dated February 13, 2008.  Each time, USCIS responded that Mr. MARTINEZ's application was pending background checks.

111.    The delay in the adjudication of Mr. MARTINEZ's naturalization application has caused him great distress and hardship.  Mr. MARTINEZ has an elderly mother who lives in Mexico whom he would like to apply to bring to the United States to live with him and his United States citizen children.  However, he cannot do so until he becomes a citizen of the United States.  Moreover, he fears that he may miss the opportunity to vote in the upcoming presidential election and to participate in the political debate regarding Latino immigrants.  Mr. MARTINEZ is deeply concerned about federal economic policies and if he could vote, would be able to impact those policies.  He wants to enjoy the usual benefits of US citizenship.

112.    At the time of the filing of this Complaint, Mr. MARTINEZ's naturalization application has not been adjudicated.  It has been 766 days (over 25 months) since the date he submitted his naturalization application and 666 days (over 21 months) since the date of his examination.

**Plaintiff ANDRES GIOVANNY SANCHEZ**

113.    Plaintiff ANDRES GIOVANNY SANCHEZ immigrated with his parents to the United States as a lawful permanent resident on or about November 28, 1999.

114.    Mr. SANCHEZ filed a naturalization application on or about December 20, 2004, after five years of lawful permanent residency.  Mr. SANCHEZ was fingerprinted in connection with his application for naturalization on February 11, 2005.

115.    On October 13, 2005, Mr. SANCHEZ was interviewed and examined by a Service Officer at USCIS.  At that interview, Mr. SANCHEZ was given written notification that he had passed the requisite English and United States history and government tests and would thereafter receive a written decision about his application.

116.    USCIS has not initiated contact with Mr. SANCHEZ to date, almost two and a half years after his examination, despite many efforts on his part to expedite the adjudication of his application.

117.    Mr. SANCHEZ scheduled an appointment to meet with an immigration officer on February 28, 2006, about the status of his application for naturalization. At that appointment, Mr. SANCHEZ was notified that his application was pending because security checks were not complete, and that a decision would be made once USCIS received the results of all outstanding security checks.

118.    Subsequently, Mr. SANCHEZ made similar inquiries about the status of his application and received similar responses on June 20, 2006, July 12, 2006, January 10, 2007, March 19, 2007, April 11, 2007, November 2, 2007, and January 28, 2008.

119.    On or about April, 2007, Mr. SANCHEZ contacted the office of United States Senator Hillary Clinton for assistance in prompting the adjudication of his naturalization application. Senator Clinton's office contacted the FBI in July of 2007, inquiring about the status of Mr. SANCHEZ's name check.  In an email response dated October 3, 2007, the FBI stated that it does not expedite name check requests.  It went on to state that the customer agency (USCIS) determines which name checks are expedited and confirmed that a review of the FBI's Name Check Program database concerning Mr. SANCHEZ revealed that the request was "received from USCIS on January 8, 2005 and

is currently in process . . . [w]hile an exact date for completion of review can not be given."

120.    Mr. SANCHEZ suffers greatly from the delay in adjudication of his naturalization applicant.  Mr. SANCHEZ's wife, Enelli Altagracia Ortiz, and their five-year-old son, Giovanny Alfonzo Sanchez, reside in the Dominican Republic.  Mr. SANCHEZ greatly misses his family and awaits the adjudication of his application for naturalization so that reunification with his family can occur in a more timely fashion. Mr. SANCHEZ also desires to be able to vote in this year's presidential election and to be able to fully participate in the democratic process of this country.

121.    Mr. SANCHEZ has not had his application for naturalization adjudicated. Mr. SANCHEZ's application for naturalization has been pending for 1,172 days (over 38 months) since the date he submitted his naturalization application and 875 days (over 28 months) since the date of his examination.

**Plaintiff NANCY CASTRO**

122.    Plaintiff NANCY CASTRO entered the United States as a lawful permanent resident on or about January 23, 1983, with her husband Angel Francisco Castro, also a lawful permanent resident.

123.    Ms. CASTRO filed her naturalization application on or about August 24, 2006, and was fingerprinted in connection with her application for naturalization in September of 2006.

124.    Ms. CASTRO thereafter received notification from USCIS that her interview and examination for naturalization was scheduled for August 7, 2007. However, shortly thereafter, Ms. CASTRO received another notification from USCIS

informing her that her scheduled naturalization examination was cancelled and would be rescheduled. The notification did not provide a reason for the cancellation.

125.    To date, almost a year and a half after her application for naturalization was submitted, Ms. CASTRO is still waiting for her interview and examination for naturalization to be rescheduled, even though it has been 560 days (over 18 months) since she submitted her naturalization application to USCIS.

126.    In an effort to determine the source of the delay in the adjudication of her naturalization application, Ms. CASTRO has made an appointment to meet with an immigration officer during March of 2008.

127.    Ms. CASTRO suffers greatly from the delay in the processing and adjudication of her naturalization application. Ms. CASTRO's husband, two of her children and four of her grandchildren are all citizens of the United States. Ms. CASTRO greatly wants to become a citizen of the same country as her family. Ms. CASTRO also wants to be able to vote for her chosen candidate in this fall's presidential election and to be able to participate fully in the democratic process of the United States.

**Plaintiff MARGOTH PEREZ De CHALAMPA**

128.    Plaintiff MARGOTH PEREZ De CHALAMPA entered the United States as a lawful permanent resident on or about July 13, 2002, with her husband, a United States citizen, and their then four-year-old daughter.

129.    Ms. PEREZ De CHALAMPA filed an application for naturalization on or about July 23, 2007, just prior to the scheduled naturalization application fee increase, and was fingerprinted in connection with her application for naturalization on September 28, 2007.

130.    To date, Ms. PEREZ De CHALAMPA has not received any notification of when her examination and interview will be scheduled.  Ms. PEREZ De CHALAMPA has been informed that USCIS has announced that all naturalization applications may take approximately 16-18 months to process, before the applicant is even scheduled for an interview and examination.

131.    Ms. PEREZ De CHALAMPA suffers greatly from USCIS's delay in the processing of her naturalization application.  Ms. PEREZ De CHALAMPA has a medical degree from a university in Bolivia, but currently works as a Health Care Coordinator for a Head Start program.  She would like to apply for other state or federal government positions, which have higher salaries, but those positions are only available to United States citizens.  In addition, Ms. PEREZ De CHALAMPA very much wants to vote in this fall's presidential election and to fully participate in the democratic process of this country.

132.    At the time of the filing of this Complaint, Plaintiff PEREZ De CHALAMPA has yet to receive an appointment for her naturalization examination, although it has been 227 days (over 7 months) since she submitted her naturalization application to USCIS.

### STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF

133.    USCIS Defendants and Defendant MUKASEY's failure to adjudicate proposed class members' applications for naturalization within 180 days of the date of their submission or an otherwise reasonable amount of time violates 5 U.S.C. §§ 555(b) and 706(1) and 8 U.S.C. § 1571(b).

### SECOND CLAIM FOR RELIEF

134.    USCIS Defendants' failure to adjudicate proposed sub-class members' applications for naturalization within 120 days of the date of their initial examination violates 8 U.S.C. § 1447(b), 8 C.F.R. § 335.3 and 5 U.S.C. §§ 555(b) and 706(1).

### THIRD CLAIM FOR RELIEF

135.    USCIS Defendants' implementation of a policy or practice of requiring an FBI name check to be completed before adjudicating a naturalization application without first publishing a proposed regulation and providing a notice and comment period violates 5 U.S.C. § 553.

### FOURTH CLAIM FOR RELIEF

136.    Defendants MUKASEY and MUELLER's failure to complete FBI name checks requested by USCIS in a reasonable time such that USCIS can adjudicate proposed class members' applications for naturalization within 180 days or within 120 days of the date of an applicant's initial examination violates 5 U.S.C §§ 555(b) and 706(1).

### FIFTH CLAIM FOR RELIEF

137.    All Defendants' failure to take all steps necessary to adjudicate proposed class members' applications for naturalization in a reasonable time violates 5 U.S.C §§ 555(b) and 706(1) and the Due Process Clause of the Fifth Amendment to the United States Constitution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor as follows:

1.    Assume jurisdiction over the matter;

2.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and

23(b)(2) with the class of Plaintiffs and the sub-class of Post-Examination Plaintiffs

proposed herein;

3.      Issue a declaratory judgment declaring that:

a.      USCIS Defendants and Defendant MUKASEY's failure to

adjudicate proposed class members' applications for naturalization within 180

days of the date of their submission or an otherwise reasonable amount of time

violates 5 U.S.C. §§ 555(b) and 706(1) and 8 U.S.C. § 1571(b);

b.      USCIS Defendants' failure to adjudicate proposed sub-class

members' applications for naturalization within 120 days of the date of their

initial examination violates 8 U.S.C. § 1447(b), 8 C.F.R. § 335.3 and 5 U.S.C.

§§ 555(b) and 706(1);

c.      USCIS Defendants' implementation of a policy or practice of

requiring an FBI name check to be completed before adjudicating a naturalization

application without first publishing a proposed regulation and providing a notice

and comment period violates 5 U.S.C. § 553;

d.      Defendants MUKASEY and MUELLER's failure to complete FBI

name checks requested by USCIS in a reasonable time such that USCIS can

adjudicate proposed class members' applications for naturalization within 180

days or within 120 days of the date of an applicants initial examination violates 5

U.S.C §§ 555(b) and 706(1); and

e.      All Defendants' failure to take all steps necessary to adjudicate

proposed class members' applications for naturalization in a reasonable time

violates 5 U.S.C §§ 555(b) and 706(1) and the Due Process Clause of the Fifth Amendment to the United States Constitution.

4.    Immediately adjudicate the naturalization application of Plaintiff SANCHEZ or order USCIS Defendants to immediately adjudicate the naturalization application of Plaintiff SANCHEZ and all members of the proposed sub-class;

5.    Remand the naturalization applications of Plaintiffs FARFAN and MARTINEZ to USCIS Defendants with instructions for immediate adjudication;

6.    Remand the applications of Plaintiffs MILANES, CASTRO and PEREZ De CHALAMPA to USCIS Defendants with instructions for immediate scheduling of their naturalization examinations and prompt adjudication of their applications;

7.    Issue a permanent injunction ordering:

a.    USCIS Defendants and Defendant MUKASEY to adjudicate the naturalization applications of all proposed class members immediately, and for those who applied for naturalization prior to March 26, 2008 and are found eligible for naturalization, to ensure that they are naturalized in time to register for the November 2008 election;

b.    all Defendants to take all steps necessary to adjudicate the naturalization applications of all proposed class members immediately, and for those who applied for naturalization prior to March 26, 2008 and are found eligible for naturalization, to ensure that they are naturalized in time to register for the November 2008 election; and

c.    USCIS Defendants to adjudicate all naturalization applications without waiting for the results of FBI name checks;

8.    Award reasonable attorneys' fees and costs pursuant to the Equal Access

to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and

9.    Grant any and all further relief this Court deems just and proper.

Dated: New York, New York
       March 6, 2008

                              Respectfully submitted,

                              FOSTER MAER (FM0680)
                              PUERTO RICAN LEGAL DEFENSE AND
                              EDUCATION FUND
                              José Perez (JP0116)
                              Jackson Chin (JC3494)
                              99 Hudson Street, 14th Floor
                              New York, New York 10013
                              Tel. (212) 219-3360


                              YISROEL SCHULMAN (YS3017)
                              NEW YORK LEGAL ASSISTANCE GROUP
                              Jane Greengold Stevens, Of Counsel (JS4790)
                              Deborah Berkman, Of Counsel (DB9491)
                              Jason Parkin, Of Counsel (JP1919)
                              Michael D. Sant'Ambrogio, Of Counsel (MS2337)
                              450 West 33rd Street, 11th Floor
                              New York, New York 10001
                              Tel. (212) 613-5000