UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VIRGINIA MILANES, OMAR MIGUEL FARFAN,
MANUEL ALBERTO MARTINEZ, ANDRES
GIOVANNY SANCHEZ, NANCY CASTRO, and
MARGOTH PEREZ DE CHALAMPA, on behalf of
themselves and all other similarly situated individuals,

        08 CV 2354

   Plaintiffs,

        (ECF CASE)

 -against-

MICHAEL CHERTOFF, in his official capacity as
Secretary of the Department of Homeland Security,
EMILIO GONZALEZ, in his official capacity as
Director of the United States Citizenship and
Immigration Services, ANDREA QUARANTILLO,
in her official capacity as District Director of the
New York City District of the United States
Citizenship and Immigration Services,
MICHAEL B. MUKASEY, in his official capacity as
Attorney General of the United States, and
ROBERT S. MUELLER, III, in his official capacity as
Director of the Federal Bureau of Investigation,

   Defendants.
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR RECONSIDERATION OF THE COURT'S
AUGUST 7, 2008 JUDGMENT ON COUNTS I AND II OF THE COMPLAINT**

   Plaintiffs respectfully move, pursuant to Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3, for reconsideration of the Court's August 7, 2008 judgment (the "August 7 Order") dismissing Counts I and II of their Complaint and denying Plaintiffs' motion for a preliminary injunction based on those Counts.

**Preliminary Statement**

   In its August 7, 2008 decision, with respect to Count II of the Complaint (seeking to compel the United States Citizenship and Immigration Service ("USCIS") to

act upon those class members' naturalization applications that have been pending for more than 120 days after their interviews), the Court found that for "cases in which the 120 days has expired but the [Federal Bureau of Investigation ("FBI")] name check has not been completed, it follows the USCIS regulation C.F.R. section 335.3(a) and the 1998 Appropriations Act are in conflict."[1]  August 7 Order at 17:15-18:11.  Based on this "conflict," the Court dismissed Plaintiffs' claim, holding that "plaintiffs have not alleged a cognizable claim to adjudication of the subclass."  Id.

The Court erred in its dismissal of Count II because, according to undisputed evidence in the record and submitted to the Court by Defendants, the FBI name check of most members of the sub-class – all of whom have been waiting more than 120 days after the date of their interviews for their applications to be adjudicated, and in a lot of cases, much longer – has been completed.

Indeed, in connection with their reply brief submitted to the Court on July 19, 2008,[2] Defendants submitted a declaration from a USCIS sub-contractor, David Keevis, that stated that, contrary to the Court's finding, as of July 14, 2008, 1,853 of the 1,889 members of the preliminary injunction sub-class, all of whom had been waiting for adjudication of their applications for more than 120 days after their interviews, had already had their FBI name checks completed.  See Declaration of David J. Keevis, July

---

[1] The Court found that Congress has made clear that the term "full criminal background check" includes both an FBI name check and a fingerprint check.  See August 7 Order at 16:6-7.  Plaintiffs disagree with this interpretation of the 1998 Appropriations Act and its legislative history but do not seek reconsideration of this issue.

[2] Because Defendants submitted this information – that directly contradicts the Defendants' prior representations concerning the source of delay in this case – to the Court after submission of Plaintiffs' reply brief and after oral argument, Plaintiffs have never previously had an opportunity to address the implications of the data contained therein.

17, 2008, (Docket No. 51, <u>Milanes v. Chertoff</u>, No. 08 Civ. 2354 (LMM)) ("Keevis Supp. Decl.") at Ex. A.  Mr. Keevis's declaration demonstrates that for the vast majority of naturalization applicants who were members of the proposed sub-class as of April 3, 2008 – all of whom have been waiting six months or longer for USCIS to adjudicate their naturalization applications – the name check is <u>not</u> the source of the delay.  Rather, the name checks of approximately 98% of the preliminary injunction sub-class have been completed.  <u>See</u> <u>id.</u>  Thus, as to these individuals, the Court's dismissal is erroneous because there is no "conflict" between the 1998 Appropriations Act as construed by the Court and 8 C.F.R. § 335.3, the agency regulation requiring adjudication of naturalization applications within 120 days of the naturalization interview.

With respect to Count I of the Complaint (seeking to compel USCIS to act upon those class members' naturalization applications that have been pending for more than 180 days), the Court stated that "the only agency action that can be compelled under the APA is action 'legally required.'"  August 7 Order at 15:10-23, citing <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55 (2004).  The Court then found that Plaintiffs could not state an unreasonable delay claim under 5 U.S.C. § 706(1) because "[w]hile USCIS is required by law to adjudicate naturalization applications, it is not under 5 U.S.C. sections 555(b) and/or 706(1), or by reason of the sense of Congress expressed in 8 U.S.C. section 1571(b), required to do so within some specific period of time" (August 7 Order at 15:23-16:07), and that in any event, the delay was not unreasonable "in light of Congress' mandate in the 1998 Appropriations Act that USCIS not adjudicate a naturalization application without completion of a full criminal

3

background check, which Congress has made clear includes both a name and a fingerprint check." Id. at 16:3-7.

The Court erred in its dismissal of Count I because (1) the Court's novel reading of Norton requiring that there be a "specific period of time" to trigger the APA unreasonable delay protections is inconsistent with a plain reading of Norton and subsequent cases addressing this issue and (2) the Court overlooked undisputed evidence in the record demonstrating that the delay in adjudicating naturalization applications for approximately 90% of the preliminary injunction class is not caused by delays in obtaining FBI name check results. See Keevis Supp. Decl. at Ex. A. For those class members whose name checks have been completed, the delay in adjudicating their applications for more than six (6) months is unreasonable. See Declaration of Prakash Khatri, dated July 8, 2008 ("Khatri Decl.") ¶¶ 3-4 (USCIS delays arose "due to several administrative actions, or non-actions, by USCIS" including "the misallocation of resources and creation of unreasonable administrative burdens; and the failure of USCIS to adequately anticipate and plan for the surge of applicants and other benefit requests in 2007. What is tragic, if not inexcusable, about these problems and the tremendous burdens they have imposed on applicants and the agency itself is that they were entirely avoidable."). Indeed, Defendants have offered no persuasive justification for USCIS's delay in adjudicating the applications of naturalization applicants whose name checks have been completed.

**Standard of Review**

The court may grant a motion for reconsideration if the moving party demonstrates (1) the need to correct a clear error of law or to prevent manifest injustice;

4

(2) an intervening change in controlling law; and/or (3) the availability of evidence not previously available.  See, e.g., Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983).  The moving party may satisfy this standard by identifying "controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Espinosa v. Delgado Travel Agency, Inc., No. 05 Civ. 6917 (SAS), 2007 WL 1222858, at *2 (S.D.N.Y. Apr. 24, 2007) (motion for reconsideration granted because "Court overlooked both controlling law and controlling facts, thereby requiring reconsideration"); In re AllianceBernstein Mut. Fund Excessive Fee Litig., No. 04 Civ. 4885 (SWK), 2006 WL 74439, at *4 (S.D.N.Y. Jan. 11, 2006) (motion for reconsideration granted because moving party pointed "to relevant case law, legislative history, and public securities filings that undermine this Court's previous calculation"); U.S. Fid. & Guar. Co. v. Frosty Bites, Inc., 350 F. Supp. 2d 508, 512 (S.D.N.Y. 2004) (motion to reconsider granted because prior opinion "was based on clear error which, if uncorrected, could result in manifest injustice").

As set forth herein, reconsideration of the Court's dismissal of Plaintiffs' claims under Counts I and II and the Court's denial of Plaintiffs' motion for a preliminary injunction on those Counts is necessary with respect to those class members whose name checks have already been completed in order to correct a clear error of law and to prevent manifest injustice.  Reconsideration of the Court's August 7 Order is also necessary because the Court committed clear error in interpreting Norton in a manner inconsistent with the plain language of that decision and contrary to every court to address the issue since Norton was decided.  Otherwise, thousands of eligible naturalization applicants will

be disenfranchised as their applications will not be adjudicated in time to allow them to register to vote in this year's presidential election.

## Argument

I.   **The Court Should Reconsider Its Holding On Count II Because the 1998 Appropriations Act has no Bearing on the Question of Whether USCIS is Obligated to Adjudicate Applications Within 120 Days of Interview for Class Members for Whom the FBI Name Checks Have Been Completed**

The Court denied Plaintiffs' motion for preliminary injunction and granted Defendants' motion to dismiss Count II on the ground that the 1998 Appropriations Act purportedly requires completion of the FBI name check prior to adjudication of a naturalization application. See August 7 Order at 10:25-11:11. This name check requirement, the Court found, conflicted with the requirement of 8 C.F.R. § 335.3 that defendant USCIS adjudicate the naturalization applications of post-interview applicants within 120 days of their interviews. Id.

Yet, as of July 14, 2008, only 36 of the 1,889 proposed subclass members whose naturalization applications had not yet been adjudicated had FBI name checks still pending. See Keevis Supp. Decl. at Ex. A. Even on April 3, 2008, the date Plaintiffs' motion for preliminary injunction was filed, only 292 of the 2,219 proposed subclass members whose naturalization applications had not yet been adjudicated had FBI name checks still pending. Id.

Thus, contrary to the Court's ruling, for the vast majority of the proposed subclass members, the Court's interpretation of the 1998 Appropriations Act has absolutely no bearing on and does not bar their claim under section 706(1) of the APA that USCIS has unlawfully withheld adjudication of their naturalization applications. For this considerable majority of the proposed sub-class, the requirement of 8 C.F.R. § 335.3

that USCIS adjudicate naturalization applications within 120 days of the interview is therefore not in conflict with the 1998 Appropriations Act. Accordingly, Plaintiffs have stated a claim for relief under section 706(1) of the APA.

Indeed, for the reasons set forth in Plaintiffs' Reply Memorandum ("Pl. Reply Mem.") at 39, Plaintiffs have demonstrated a substantial likelihood of success on the merits of Count II. Only two facts are material to judgment on Count II for those persons whose name checks have been completed: that the proposed subclass members have been interviewed, and that 120 days have passed since their interviews. Defendants do not dispute either of these facts. See June 19, 2008 Declaration of David J. Keevis, (Docket No. 41, Milanes v. Chertoff, No. 08 Civ. 2354 (LMM)). Plaintiffs have therefore shown a substantial likelihood of success on the merits of this claim, and a preliminary injunction in favor of Plaintiffs on this count is warranted.

Plaintiffs therefore respectfully request that the Court reconsider its ruling as to Count II of Plaintiffs' Complaint, reinstate the claims of those members of the subclass whose name checks are complete, and grant a preliminary injunction in favor of Plaintiffs on this count with respect to those members of the proposed subclass.

II.     **The Court Should Reconsider Its Dismissal of Count I Because the Court's Reliance on Norton is Misplaced and Defendants Have Offered No Persuasive Justification for USCIS's Delay for those Class Members for Whom the FBI Name Checks Have Been Completed**

Citing Norton, 542 U.S. at 62, the Court found that because USCIS is not required to act "within some specific period of time," August 7 Order at 16:1-2, Plaintiffs cannot state a claim for unreasonable delay under sections 555(b) and 706(1) of the APA. This decision is erroneous because (a) the Court's interpretation of Norton is not

7

supported by either the case itself or its progeny; and (b) the Court's holding is contrary to well settled law, both within the Second Circuit and other jurisdictions, holding that USCIS's adjudication of immigration benefits applications – even those applications for which there is no clear statutory deadline – is governed by section 555(b) of the APA (requiring government agencies to conclude matters presented to them within a reasonable time).

The Court plainly erred in relying on Norton to limit plaintiffs' ability to compel agency action under section 706(1) solely to those actions for which a concomitant deadline or timetable for action had already been set by statute. August 7 Order at 15:19-16:13. First, this novel interpretation of Norton is not supported by the case itself. Norton addressed the type of agency action subject to APA sections 555(b) and 706(1) and held that "discrete," "legally required" agency action can be compelled under section 706(1).[3]

Indeed, it is axiomatic that unreasonable delay claims under the APA can succeed without the existence of a statutory or regulatory deadline. When a plaintiff claims that an agency has failed to take action as required by a specific deadline, he states a claim that agency action has been unlawfully withheld, not unreasonably delayed. The

---

[3] While the Norton Court stated in dicta that section 706 would authorize courts to compel an agency to comply with a statutory deadline, it in no way suggested that section 706 was limited to compelling action under those circumstances. Norton, 542 U.S. at 65; see also Alkeylani v. Dep't of Homeland Sec., 514 F. Supp. 2d 258, 265 (D. Conn. 2007) (finding in an adjustment of status case that "[b]ecause USCIS's obligation to adjudicate . . . applications is clearly prescribed, the failure to do so within a 'reasonable' period of time constitutes 'an agency['s] fail[ure] to take a discrete action that it is required to take'") (quoting Norton, 542 U.S. at 64) (emphasis in original); Saleem v. Keisler, 520 F. Supp. 2d 1048, 1058 (W.D. Wisc. 2007) (noting that the Norton Court "made statements in dicta that § 706 would authorize courts to compel an agency to comply with a statutory deadline, but the Court did not suggest . . . that § 706 was limited to compelling action under those circumstances") (internal citations omitted).

very purpose of the "unreasonable delay" provision is thus to govern those cases in which no specific deadline has been set. As the Tenth Circuit explained in Forest Guardians v. Babbitt:

> [T]he distinction between agency action "unlawfully withheld" and "unreasonably delayed" turns on whether Congress imposed a date-certain deadline on agency action. See Sierra Club v. Thomas, 828 F.2d 783, 794-95 & nn.77-80 (D.C. Cir. 1987) (citing cases and drawing a distinction between an agency's refusal to comply with an absolute time requirement for action and an agency's more generalized unreasonable delay in acting). In our opinion, when an agency is required to act-either by organic statute or by the APA-within an expeditious, prompt, or reasonable time, § 706 leaves in the courts the discretion to decide whether agency delay is unreasonable. However, when Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion. The agency must act by the deadline. If it withholds such timely action, a reviewing court must compel the action unlawfully withheld. To hold otherwise would be an affront to our tradition of legislative supremacy and constitutionally separated powers.

174 F.3d 1178, 1190 (10th Cir. 1999); see also Ren v. Mueller, No. 6:07-CV-790-ORL-19DAB, 2008 WL 191010, at * 9 (M.D. Fla. Jan. 22, 2008) (explaining that "the concept of an unreasonable delay exists separate and distinct from any statutorily imposed deadline" (citing Tang v. Chertoff, 493 F. Supp. 2d 148, 155 (D. Mass. 2007))).

Moreover, not only is the Court's decision unsupported by the authority on which it is based, it also directly conflicts with other cases decided within the Southern District holding that USCIS's adjudication of immigration benefit applications – including naturalization applications – is subject to section 555(b) of the APA. In Kim v. Ashcroft, 340 F. Supp. 2d 384 (S.D.N.Y. 2004), a frequently cited opinion, Judge Scheindlin held that although there is no statutory or regulatory deadline by which USCIS must adjudicate an application, at some point, USCIS's failure to take any action runs afoul of section 555(b) of the APA. See id. at 393 ("Were it otherwise, the CIS could hold adjustment applications in abeyance for decades without providing any

9

reasoned basis for doing so. Such an outcome defies logic – the CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely."); see also Nigmadzhanov v. Mueller, 550 F. Supp. 2d 540, 547 (S.D.N.Y. 2008) ("[A] duty to decide [immigration benefit applications] that is unconstrained by a reasonableness requirement makes little sense."); Am. Acad. of Religion v. Chertoff, 463 F. Supp. 2d 400, 419-23 (S.D.N.Y. 2006) (quoting Kim and holding that government failed to adjudicate plaintiff's pending B-visa application within a reasonable period of time). Other courts to consider this issue agree. See, e.g., Ceken v. Chertoff, 536 F. Supp. 2d 211, 216 (D. Conn. 2008) (finding that "[w]hile the defendants possess the discretion to determine the outcome of plaintiff's application, they do not have the discretion over whether the outcome of the application is determined at all"); Eid v. Chertoff, No. 07-CV-201 (JBA), 2008 WL 905927, at *15 (D. Conn. Mar. 31, 2008) (finding that "[defendant's] position that his unreviewable discretion to grant or deny applications under § 1255(a) extends to discretion to adjudicate those requests at the pace of his choosing no matter how slow is inconsistent with its obligation under the APA to conclude the matter presented it within a reasonable time"); Shaikh v. Gonzales, No. C07-0506, 2007 WL 4259410, at *2-4 (N.D. Cal. Dec. 3, 2007) (finding that while USCIS's discretion to set the procedures by which it adjudicates applications gives it some flexibility in determining the timing of a decision, each application must ultimately be completed within a reasonable time); Aslam v. Mukasey, 531 F. Supp. 2d 736, 742 (E.D. Va. 2008) (finding that the Department of Homeland Security is subject to the catchall time requirement of the APA); Tang v. Chertoff, 493 F. Supp. 2d 148, 154-58 (D. Mass. 2007) (reasoning that Congress' use of the word "unreasonable" in § 706 (1) to

describe delay meant judicial review was appropriate to determine the legality of delay when there was no fixed deadline set out in a separate statute or regulation); Yue Yu v. Brown, 36 F. Supp. 2d 922, 931-32 (D.N.M. 1999) (finding that the APA imposes a duty upon USCIS to complete action on immigration benefit application within a reasonable time).

Furthermore, the Court erred by overlooking the fact that tens of thousands of immigrants in the proposed class have had their applications unreasonably delayed notwithstanding that their FBI name checks are complete.  As of July 14, 2008, 26,748 of the 29,975 proposed class members whose naturalization applications had not yet been adjudicated already had their FBI name checks completed.  See Keevis Supp. Decl. at Ex. A.  Thus, the Court's reasoning in support of its dismissal of Count I simply does not apply to approximately 90 percent of the members of the proposed class.  Even on April 3, 2008, the date Plaintiffs' motion for preliminary injunction was filed, of the 55,405 proposed class members whose naturalization applications had not yet been adjudicated, approximately 87 percent (48,082) had already had their FBI name checks completed.  Id.  In other words, for the vast majority of class members in this action, the FBI name check is not the cause of the delays they challenge here.

The Court found that Plaintiffs' Complaint does not sufficiently plead unreasonableness in light of the congressional mandate that USCIS not adjudicate naturalization applications prior to completion of a full criminal background check.  However, the Court failed to take into consideration the rights of those plaintiffs whose names checks have been completed.  The Court did not address whether USCIS's failure to adjudicate the naturalization applications of these class members constitutes

unreasonable delay under section 555(b) of the APA, despite being presented with significant evidence that delays caused by USCIS apart from any delays caused by the FBI name check program are unreasonable. See Pl. Reply Mem. at 18; Khatri Decl. ¶ 47 (USCIS "understaffing was so substantial that thousands of applications sat for months, some as long as six months, in large room-sized containers before being opened up to begin being processed"); Declaration of William Yates, dated July 8, 2008 ¶ 17 ("Since the mid-1990s, USCIS . . . [has] demonstrated a history of repeated cycles of unwarranted and harmful delays in the adjudication of naturalization applications."); Defendants' Reply Memorandum at 26 ("lengthy processing times for naturalization and other immigrant benefit applications have long existed"). For all of the reasons set forth in Plaintiffs' Opening Memorandum ("Pl. Mem.") and Reply Memorandum, USCIS's failure to timely adjudicate these class members' naturalization applications violates section 555(b) of the APA. See Pl. Mem. at 28-32; Pl. Reply Mem. at 28-33.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its ruling as to Counts I and II of Plaintiffs' Complaint with respect to those members of the proposed class and sub-class whose name checks have been completed, reinstate the Counts as to those class members, and issue a preliminary injunction directing USCIS Defendants to adjudicate the applications of those class members in time for those found eligible to be naturalized to register to vote in the November 2008 election.

| | |
|---|---|
| Dated: New York, New York<br>August 19, 2008 | Respectfully Submitted,<br><br>Weil, Gotshal & Manges LLP<br><br>By:  /s/ Richard W. Slack<br><br>    James W. Quinn<br>    Richard W. Slack<br>    Malick Ghachem<br>    Caroline Zalka<br><br>    767 Fifth Avenue<br>    New York, NY  10153<br>    212-310-8000<br><br>Puerto Rican Legal Defense and Education Fund<br>    Foster Maer<br>    Jose Perez<br>    Jackson Chin<br><br>    99 Hudson Street, 14th Floor<br>    New York, NY  10013<br>    212-219-3360<br><br>New York Legal Assistance Group<br>    Yisroel Schulman<br>    Jane Greengold Stevens<br>    Jason Parkin<br><br>    450 West 33rd Street, 11th Fl<br>    New York, NY  10001<br>    212-613-5000<br><br>    Attorneys for Plaintiffs |