UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

VIRGINIA MILANES, *et al.*,

                        Plaintiffs,

            v.

MICHAEL CHERTOFF, *et al.*,

                    Defendants.

-------------------------------------------------------------------x

ECF Case

08 Civ. 2354 (LMM) (KNF)


DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION


MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York  10007
Tel:   (212) 637-2722
Fax:  (212) 637-2687


TOMOKO ONOZAWA
KIRTI VAIDYA REDDY
ROBERT WILLIAM YALEN
Assistant United States Attorneys
    – Of Counsel –

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    THE COURT SHOULD REJECT PLAINTIFFS' EFFORT TO
        RE-LITIGATE MATTERS ALREADY DECIDED BY THE COURT . . . . . . . . 4

        A.    The Parties Fully Briefed, and the Court Decided, Plaintiffs'
                Claims Concerning Factors Other than the FBI Name Check
                that Contribute to Naturalization Application Processing Times . . . . . . . 5

        B.    Plaintiffs Do Not Identify Any Issue the Court "Overlooked"
                Concerning *Norton v. Southern Utah Wilderness Alliance*,
                But Simply Disagree with the Court's Conclusions . . . . . . . . . . . . . . . . 9

    II.    IN THE ALTERNATIVE, THE COURT SHOULD ADHERE TO ITS
        ORIGINAL DECISION DISMISSING THE COMPLAINT . . . . . . . . . . . . . . . 10

        A.    The Court's Ruling Concerning the FBI Name Check Forecloses
                the Relief Sought in the Reconsideration Motion . . . . . . . . . . . . . . . . . . 10

        B.    The Court Properly Dismissed Count I of the Complaint for
                Failure to State a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C.    The Court Properly Dismissed Count II Pursuant to
                8 U.S.C. § 1447(b) and APA Section 706(1) . . . . . . . . . . . . . . . . . . . . . . 15

    III.    PLAINTIFFS' IMPLICIT MOTION FOR CERTIFICATION OF A
        NEW CLASS AND NEW SUBCLASS SHOULD BE DENIED . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

*CASES:*                                                                                          *Page*

*A. L. Mechling Barge Lines, Inc. v. United States,*
    368 U.S. 324 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*Ahmadi v. Chertoff,*
    No. C 07-03455 (WHA), 2007 WL 3022573 (N.D. Cal. Oct. 15, 2007) . . . . . . . . . . . 17

*Antonishin v. Keisler,*
    No. 06 Civ. 2518, 2007 WL 2788841 (N.D. Ill. Sept. 20, 2007) . . . . . . . . . . . . . . . 16, 17

*Brown v. Barnhart,*
    No. 04 Civ. 2450 (SAS),  2005 WL 1423241 (S.D.N.Y. June 16, 2005) . . . . . . . 9, 10, 20

*Bustamante v. Chertoff,*
    533 F. Supp. 2d 373 (S.D.N.Y. 2008)
    *appeal docketed*, No. 08-0990-cv (2d Cir. Feb. 28, 2008) . . . . . . . . . . . . . . . . . . . . . . . 15

*Cutler v. Hayes,*
    818 F.2d 879 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Finkelstein v. Mardkha,*
    518 F. Supp. 2d 609 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Forest Guardians v. Babbitt,*
    174 F.3d 1178 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hani v. Gonzales,*
    No. 3:07-CV-517-S, 2008 WL 2026092 (W.D. Ky. May 8, 2008) . . . . . . . . . . . . . 16, 17

*Heckler v. Day,*
    467 U.S. 104 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*Ibrahim v. Chertoff,*
    529 F. Supp. 2d 611 (E.D.N.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Barr Laboratories, Inc.,*
    930 F.2d 72 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

*In re Health Management Systems, Inc. Securities Litigation,*
    113 F. Supp. 2d 613 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re World Trade Center Disaster Site Litigation,*
No 21 MC 100 (AKH), 2008 WL 2704317 (S.D.N.Y. July 10, 2008) . . . . . . . . . . . . 4, 9

*James v. Artuz,*
No. 93 Civ. 2056 (LMM), 1998 WL 310770 (S.D.N.Y. June 12, 1998) . . . . . . . . . . . . 10

*Lahrar v. USCIS,*
485 F. Supp. 2d 705 (E.D. Va. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Norton v. Southern Utah Wilderness Alliance,*
542 U.S. 55 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Omar v. Mueller,*
501 F. Supp. 2d 636 (D. N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Range Road Music, Inc. v. Music Sales Corp.,*
90 F. Supp. 2d 390 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Reddy v. CFTC,*
191 F.3d 109 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Roshandel v. Chertoff,*
No. C07-1739 (MJP), 2008 WL 2275558 (W.D. Wash. June 3, 2008) . . . . . . . . . . . . 22

*Saini v. Heinauer,*
552 F. Supp. 2d 974 (D. Neb. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Shalabi v. Gonzales,*
No. 4:06CV866, 2006 WL 3032413 (E.D. Mo. Oct. 23, 2006) . . . . . . . . . . . . . . . . . . 16

*Stephens v. Shuttle Associates, L.L.C.,*
547 F. Supp. 2d 269 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 20


*STATUTES*:

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5 U.S.C. § 706(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

8 U.S.C. § 1447(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

8 U.S.C. § 1571(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14

Consolidated Appropriations Act, 2008,
       Pub. L. 110-161, 121 Stat. 1844 (Dec. 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Immigration Act of 1990,
       Pub. Law 101-649, 104 Stat. 4978 (Nov. 29, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Immigration Services and Infrastructure Improvements Act,
       Pub. L. No. 106-313, 114 Stat. 1262 (Oct. 17, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S. Troop Readiness, Veterans' Care, Katrina Recovery and Iraq Accountability Act 2007,
       Pub. L. No. 110-28, 121 Stat. 112 (May 25, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*REGULATIONS:*

8 C.F.R. § 335.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*RULES:*

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22

Local Civil Rule 6.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

Defendants Michael Chertoff, Jonathan Scharfen, Andrea Quarantillo, Michael B. Mukasey, and Robert S. Mueller, III (collectively, "defendants" or the "Government") respectfully submit this memorandum in opposition to plaintiffs' motion for reconsideration, in part, of the Court's dismissal of Counts I and II of their complaint and denying plaintiffs' motion for a preliminary injunction.

## PRELIMINARY STATEMENT

Plaintiffs' motion for reconsideration seeks to take advantage of the fact that "in the interest of expedition" the Court rendered an abbreviated oral decision on the record. Transcript of Decision, August 7, 2008 ("Aug. 7 Decision") at 19:17-18. The Court expressly stated that although it had not discussed all of the arguments presented by the parties, "That does not mean that the [other] arguments have been overlooked." *Id.* at 19:21-22. To the contrary, the Court held that it had not been "persuaded" by any of the parties' arguments inconsistent with the Court's dismissal of the case. *See id.* at 19:22-23. Because the arguments now raised by plaintiffs' reconsideration motion simply rehash matters presented to and resolved by the Court or, in some respects, attempt to present new theories not previously argued by plaintiffs, the reconsideration motion should be denied.

To the extent, however, that the Court considers plaintiffs' arguments on the merits, it is equally clear that the Court should reject those arguments and adhere to its August 7 decision dismissing the complaint. As an initial matter, the Court's ruling that the FBI name check is mandatory, *see id.* at 10:25-11:2, a ruling plaintiffs do not challenge on the present motion, precludes the relief that the plaintiffs seek. Plaintiffs ask the Court to reinstate their claims – and issue a preliminary injunction – as to class members whose FBI name checks have been completed. They fail, however, to address the fact that FBI name checks would previously have

been conducted for each of these individuals and, in numerous cases and to varying degrees, those FBI name checks would have contributed to the length of time required for processing of those applications. Because plaintiffs do not allege any facts, or present any evidence, to suggest that USCIS acts unreasonably on a class-wide basis in processing applications *after* receiving the results of the FBI name check, but simply ask this Court to declare that individuals are entitled to immediate relief if their applications have been pending 180 days *from filing* (Count I) or 120 days *from interview* (Count II), the fact that the FBI name check previously may have contributed to an individual's application processing time is fatal to plaintiffs' motion.

Further, the Court's decision dismissing the complaint was correct, even as applied to individuals whose FBI name checks have already been completed. As to Count I, the Court correctly held that plaintiffs could not show that USCIS had a duty to adjudicate their applications within any specific period of time. Plaintiffs' claim that it is "novel" to require them to show such a duty is simply incorrect, as several cases in the naturalization context have adopted just such an analysis, which correctly reflects the rule adopted by the Supreme Court in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004). As to Count II, the Court also properly concluded that plaintiffs are not entitled to class-wide relief. Whether Count II is considered a claim pursuant to 8 U.S.C. § 1447(b) or, in the alternative, pursuant to 5 U.S.C. § 706(1) and 8 C.F.R. § 335.3, plaintiffs are not entitled to the relief sought, in light of the record evidence of USCIS's good faith and ongoing efforts to reduce naturalization processing times, including the Surge Response Plan adopted by USCIS to allocate resources to reduce the effect of the 2007 "surge" in applications. Finally, plaintiffs' motion for reconsideration fails to address numerous additional arguments of the Government, fully briefed in its papers on the

underlying motions, that require dismissal of plaintiffs' complaint without regard to the issues plaintiffs' raise in their reconsideration motion.

In addition, the Court should reject plaintiffs' implicit request in their reconsideration motion for the certification of two new subclasses never previously identified by plaintiffs: (*i*) members of plaintiffs' initially proposed class whose applications have been pending without decision for 180 days and whose FBI name checks have been completed (the "New Class"), and (*ii*) members of the New Class whose applications have been pending for 120 days without decision since a naturalization interview (the "New Subclass"). As a new legal theory not previously advanced by plaintiffs, their suggestion that this new class and subclass be certified should be denied. In any event, even if the Court were to overlook plaintiffs' failure to brief previously (or, indeed, on the present motion) whether these new class are certifiable, the Court should deny plaintiffs' request because the New Class and New Subclass cannot satisfy the requirements of Rule 23. With the allegedly common issue of a pending FBI name check now defined out of plaintiffs' proposed classes, the claims of the New Class and New Subclass would inevitably need to be addressed on an individualized basis. Thus, class certification should be denied.

Accordingly, the Court should deny plaintiffs' motion for reconsideration or, in the alternative, grant reconsideration but adhere to the Court's initial determination that the complaint should be dismissed and that plaintiffs' motions for a preliminary injunction and for class certification should be denied.

**ARGUMENT**

**I.    THE COURT SHOULD REJECT PLAINTIFFS' EFFORT TO
RE-LITIGATE MATTERS ALREADY DECIDED BY THE COURT**

Plaintiffs' motion for reconsideration should be denied because plaintiffs have not

identified any "matters or controlling decisions . . . the court has overlooked," as required by

Local Civil Rule 6.3.  As one decision has recently summarized:

> A court must narrowly construe and strictly apply Local Rule 6.3 so as to avoid
> duplicative rulings on previously considered issues and to prevent the Rule from being
> used to advance different theories not previously argued, or as a substitute for appealing a
> final judgment.

*Stephens v. Shuttle Associates, L.L.C.*, 547 F. Supp. 2d 269, 280 (S.D.N.Y. 2008).  "[A] motion

for reconsideration is not a motion to reargue those issues already considered when a party does

not like the way the original motion was resolved."  *Finkelstein v. Mardkha*, 518 F. Supp.2d 609,

611 (S.D.N.Y. 2007) (internal quotation marks omitted); *see In re World Trade Center Disaster*

*Site Litigation*, No 21 MC 100 (AKH),  2008 WL 2704317, at *2 (S.D.N.Y. July 10, 2008) ("A

motion for reconsideration does not provide the parties with an opportunity to reargue issues that

have already been decided just because a party is displeased with the original outcome.").

Indeed, reconsideration "is an extraordinary remedy to be employed sparingly in the interests of

finality and conservation of scarce judicial resources."  *In re Health Management Systems, Inc.*

*Securities Litigation*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000).  Here, each of the two

arguments plaintiffs make in their reconsideration motion amount to mere re-litigation of matters

already presented to, and decided by, the Court on the underlying motion.

A.    The Parties Fully Briefed, and the Court Decided, Plaintiffs' Claims Concerning Factors Other than the FBI Name Check Process that Contribute to Naturalization Application Processing Times

First, although plaintiffs argue that the Court overlooked the fact that the FBI name checks of numerous class members have already been completed, *see* Mot. at 2-4,[1] this matter was fully presented to the Court and, as the Court stated, not "overlooked."  *See id.* at 19:22. Prior to the Court's decision, the parties had fully apprised the Court both of the general fact that matters other than the FBI name check – such as the "surge" – contribute to application processing times *and* the specific fact that the FBI name checks of some members of the class and subclass had been completed.  Thus, from the beginning, plaintiffs' complaint alleged that the surge was a cause of unreasonable naturalization processing times, *see* Complaint, dated March 6, 2008 ("Cplt."), at ¶¶ 81-85, and the parties thereafter addressed in great depth the sources and effects of the surge and the relevance of other individualized factors that lengthen processing times, *see, e.g.*, Pl. Opening Mem.[2] at 12 (discussing the "dramatic[]" effect of the

_____

[1] The abbreviation "Mot." refers to the Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration of the Court's August 7, 2008 Judgment on Counts I and II of the Complaint, dated August 19, 2008.

[2] The Government will use the following abbreviations for the parties' prior briefs in this matter: "Pl. Opening Mem." refers to Plaintiffs' Memorandum of Law in Support of Their Motions for Preliminary Injunction, Class Certification and Expedited Discovery, dated Apr. 3, 2008; "Def. Opening Mem." refers to Defendants' Memorandum of Law in Support of their Motion to Dismiss in Part and Remand in Part, or, in the Alternative, for Summary Judgment, and in Opposition to Plaintiffs' Motions for a Preliminary Injunction and Class Certification, dated June 19, 2008; "Pl. Reply Mem." refers to Plaintiffs' Memorandum of Law in Further Support of Their Motions for Preliminary Injunction and Class Certification and in Opposition to Defendants' Motion to Dismiss in Part and Remand in Part, or, in the Alternative, for Summary Judgment, dated July 9, 2008; and "Def. Reply. Mem." refers to Defendants' Memorandum of Law in Further Support of Their Motion to Dismiss in Part and Remand in Part, or, in the Alternative for Summary Judgment, dated July 18, 2008.

surge on naturalization processing times); Def. Opening Mem. at 9, 20-23 (describing the Surge as a "principal" contributing factor to naturalization processing times and detailing USCIS's reasonable response to the surge, and also describing individualized factors affecting processing times); Pl. Reply Mem. at 18-21, 84-85 (discussing the surge and responding to the Government's contention about individual processing times); Def. Reply Mem. at 6 (discussing the surge). The Government filed an administrative record containing many materials relating to the surge,[3] as well as the transcript of the deposition of a USCIS officer taken pursuant to Rule 30(b)(6) in which the surge is discussed at length, *see* Declaration of Kirti Vaidya Reddy, dated July 18, 2008, Exhibit A (Deposition of Michael L. Aytes) ("Aytes Dep."), at 175:12-183:14; 189:17-190:19. Indeed, plaintiffs themselves submitted the declaration of an individual who purported to explain both the causes and effects of the surge. *See* Declaration of Arturo Vargas, dated Mar. 31, 2008, ¶¶ 6-24.

Moreover, on June 19, 2008, with its opening papers, the Government submitted a declaration to the Court showing that the FBI name checks of all of the named plaintiffs had been completed prior to that date, but that one of the named plaintiffs was still awaiting an adjudication, and two had received adjudications but were awaiting oath ceremonies. *See* Declaration of Michael A. Cannon, dated June 6, 2008, at ¶¶ 43-48; Declaration of David J. Keevis ("Keevis Decl."), dated June 19, 2008, ¶¶ 3, 7, 6. Then, at oral argument on July 15,

---

[3] *See, e.g.*, CIS004660-80 (relating to Surge Response Plan); CIS004682-826 (review of USCIS fee schedule prior to increase that resulted in surge); CIS004828-55 (regarding fee increase); CIS005017-130 (Federal Register proposed fee rule; CIS004627-43 (USCIS analysis of fee increase); CIS005323-26 (USCIS requesting to Congress increase in spending authority to address increased workload). Citations to documents Bates-numbered with the "CIS" prefix refer to documents that are available in the administrative records previously filed with Court.

2008, the Government recited statistics for the Court indicating that FBI name checks had been completed for many individuals potentially in plaintiffs' "Preliminary Injunction Group," and demonstrating that the number of pending FBI name checks for this group had been reduced during the course of the litigation. *See* Transcript of Argument, held July 15, 2008[4] ("Argument Trans."), at 79:9-19, 116:3-7. Finally, on July 18, 2008, the Government submitted a declaration providing detailed statistics regarding how many individuals in plaintiffs' Preliminary Injunction Group were still awaiting FBI name checks as of April 3, June 17, and July 14, 2008. *See* Supplemental Declaration of David J. Keevis ("Keevis Supp. Decl."), dated July 17, 2008, ¶¶ 13-20 & Exhibit A. Thus, the specific facts on which plaintiffs now rely were fully presented to the Court in connection with the prior motions.[5]

Thus, the parties fully presented to the Court (1) that the "surge" was a principal cause of the length of naturalization processing times, (2) that individualized factors contributed as well in individual cases, and (3) that many class members' FBI name checks had been completed.

---

[4] Although the Court reporter's transcript indicates that argument occurred on July 16, 2008, *see* Argument Transcript (cover page), in fact argument was held on July 15, 2008.

[5] Plaintiffs' suggestion that the Government failed to disclose the relevant facts to them prior to the Government's reply papers, *see* Mot. at 2 n.2, is simply untrue. To the contrary, in addition to the Government's repeated discussion of (i) the effects of the surge and individualized factors and (ii) the materials submitted to the Court referred to above, on June 2, 2008, in response to plaintiffs' interrogatories, the Government produced plaintiffs a database of all applicants for naturalization in the New York District whose applications had been pending six months or longer without a determination as of April 2, 2008, according to USCIS's datasystems. This database included information from which plaintiffs could readily determine that many of their proposed class and subclass members' FBI name checks had been completed. Thereafter, on July 1, 2008 – more than a week before plaintiffs filed their principal brief in this case – the Government produced plaintiffs a second database, which updated the data contained in the first database and corrected certain errors in it. From this July 1, 2008, database, again, plaintiffs had the ability to determine what they now claim to have been hidden from them, that the name checks of thousands of class members had been completed.

Despite this, whether for tactical reasons or otherwise, plaintiffs repeatedly placed emphasis on the FBI name check as the principal issue in the case, and downplayed the Government's arguments that the surge is a second principal contributor to naturalization processing times and that individualized factors are also significant in particular cases. For example, in its opening brief, the Government described the complex factors leading to increased naturalization processing times:

> The average length of processing times for naturalization applications are principally affected by two factors: First, the time it takes for FBI to conduct a "name check" of the applicant, *see infra* at 20, and resource constraints on processing the vast number of applications for naturalization and for other immigration benefits filed during in summer 2007, in what has been referred to as the "surge," *see infra* at 21-22. In any individual case, however, the length of time that a naturalization application is pending may vary based on individual-specific factors . . . .

Def. Opening Mem. at 9. Yet in response, plaintiffs focused their argument on the FBI name check:

> There is no significant source of dispute between the parties as to the causes of the backlogs and delays: Defendants concede that the [FBI name check] requirements mandated by the 2002 Rule are one of the principal contributing factors to the delays in the processing of naturalization application.

Pl. Reply Mem. at 3. As a result, when the Court issued an oral decision "in the interest of expedition," Aug. 7 Decision at 19:17-18, the Court reasonably focused its discussion on plaintiffs' principal target, the FBI name check. The Court made clear, however, that its focus on certain issues "does not mean that the [other] arguments have been overlooked." *Id.* at 19:21-22. Rather, the Court "ha[d] not been persuaded" by the remainder of the arguments against

dismissal. *Id.* at 19:22-23. Accordingly, as the Court has already decided these issues, the Court should reject plaintiffs' request for reconsideration. *See, e.g.*, *Stephens*, 547 F. Supp. 2d at 280.[6]

B.    Plaintiffs Do Not Identify Any Issue the Court "Overlooked"
Concerning *Norton v. Southern Utah Wilderness Alliance*,
But Simply Disagree with the Court's Conclusions

Plaintiffs' second contention on their reconsideration motion is equally an attempt to re-litigate a legal issue that the Court has decided adversely to them. Plaintiffs assert that the Court "plainly erred," Mot. at 8, in its interpretation of *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004). Plaintiffs' explanation of this alleged "plain error" does not identify any "controlling decisions . . . the court has overlooked." Local Civil Rule 6.3. Instead, plaintiffs argue that the Court adopted an allegedly "novel" interpretation of *Norton* that plaintiffs believe to be incorrect. *See* Mot. at 8. Because plaintiffs simply repeat the positions they previously advanced in their prior papers, *see* Pl. Opening Mem. at 28-29 (addressing *Norton*); Reply Mem. at 30, 32, 37 (same), rather than identify any matters overlooked by the Court, their argument does not present a basis for granting reconsideration. *See Stephens*, 547 F. Supp. 2d at 280 (explaining that a motion for reconsideration may not be used "as a substitute for appealing a final judgment"); *Brown*, 2005 WL 1423241, at *2 ("If my determination was erroneous, that is

---

[6] To the extent that plaintiffs are using this motion to reconsideration as an occasion to place new emphasis on certain facts and to recast their legal theories, the Court should reject plaintiffs' motion for the additional reason that the "the moving party [on a motion for reconsideration] may not advance new facts, issues or arguments not previously presented to the Court." *Brown v. Barnhart*, No. 04 Civ. 2450 (SAS), 2005 WL 1423241, at *1 (S.D.N.Y. June 16, 2005) (internal quotation marks omitted); *see also, e.g.*, *In re World Trade Center Disaster Site Litigation*, 2008 WL 2704317, at *1 ("[A] motion for reconsideration is not an opportunity for a losing party . . . to change its theories."); *Stephens*, 547 F. Supp. 2d at 280 (explaining that a motion for reconsideration may not be "used to advance different theories not previously argued").

a decision to be made by the appellate court, not by the district court on reconsideration.");

*James v. Artuz*, No. 93 Civ. 2056 (LMM), 1998 WL 310770, at *1 (S.D.N.Y. June 12, 1998)

(rejecting motion for reconsideration that "does nothing more than to repeat the arguments

previously presented to and considered by the Court").[7]

## II.    IN THE ALTERNATIVE, THE COURT SHOULD ADHERE TO ITS ORIGINAL DECISION DISMISSING THE COMPLAINT

Even if the Court were to consider the merits of the arguments presented in plaintiffs'

motion for reconsideration, the Court should reject those arguments and adhere to its original

decision dismissing the complaint.

### A.    The Court's Ruling Concerning the FBI Name Check Forecloses the Relief Sought in the Reconsideration Motion

In its August 7 decision, the Court held that "Congress has mandated the use of

naturalization proceedings of the FBI name check," Aug. 7 Decision at 10:25-11:2, a ruling that

plaintiffs do not challenge, for the purposes of the present reconsideration motion, *see* Mot. at 2

n.1.  This ruling, however, precludes the relief plaintiffs seek in their motion for reconsideration,

because all individuals whose FBI name checks are now completed will *previously* have had

name checks conducted, and in the case of numerous individuals, the time spent on that

---

[7] Additionally, plaintiffs' reconsideration motion may be read to suggest that plaintiffs now seek a preliminary injunction on behalf of all members of their "class" and "subclass" whose FBI name checks are completed.  *See* Mot. at 12.  This would be an expansion beyond the request for relief contained in plaintiffs' preliminary injunction motion, which sought an injunction only as to the "Preliminary Injunction Group," a subset of their class and subclass. *See* Pl. Opening Mem. at 2.  To the extent that plaintiffs seek to use this reconsideration motion to *expand* their request for relief beyond that sought on the underlying motion, their request should be denied.  *See, e.g.*, *Brown*, 2005 WL 1423241, at *1 (prohibiting new "issues or arguments" on a motion for reconsideration).

individual's FBI name check may have accounted for the passage of a significant portion of the 180 and 120 day periods time that plaintiffs ask the Court to impose as deadlines.[8]

The theory advanced in plaintiffs' motion for reconsideration is that APA Section 706(1) effectively makes mandatory the "sense of Congress" expressed in 8 U.S.C. § 1571(b) that immigration benefits should be decided within 180-days *from filing*, and that 8 U.S.C. § 1447(b) and 8 C.F.R. § 335.3 make mandatory the decision of all naturalization applications with 120 days *from an applicant's examination*.  *See* Mot. at 3-4, 7-12.  Because this Court has held, however, that "it is not and cannot be an unreasonable delay to await the results of the full name check," Aug. 7 Decision at 16:9-10, and that the Congressionally adopted FBI name check requirement trumps any requirement that applications must be decided within the 120-day of an examination, *see id.* at 18:8, the 180- and 120-day periods cannot be determinative for class members who, to a greater or lesser degree, had spent part of the 180- or 120-day periods awaiting the results of the FBI name check.  The class claims and class-wide preliminary injunction that plaintiffs now seek are therefore inconsistent with the Court's ruling on the FBI name check, which plaintiffs do not challenge.

Moreover, plaintiffs make no allegations, and cite to no evidence, to suggest that USCIS acts unreasonably in its processing of naturalization applications *after* USCIS receives the results

---

[8] Indeed, the FBI has recently been able to complete many long-pending FBI name checks as a result of the FBI's business plan.  *See, e.g.*, Declaration of Robert William Yalen ("Yalen Decl."), dated June 19, 2008, Ex. C (FBI business plan, public version) (CIS006307-24); Argument Trans. at 78:4-23 (describing FBI progress in resolving older cases pursuant to the business plan).

of the FBI name check.[9]  Nor do plaintiffs attempt to set forth any particular factual or legal

standard by which the Court could conclude whether USCIS had acted appropriately and

reasonably following the receipt of an FBI name check response in a given case.  Accordingly,

the Court's ruling that the FBI name check is mandatory forecloses the relief plaintiffs seek on

their motion for reconsideration.

B.    The Court Properly Dismissed Count I of the
      Complaint for Failure to State a Claim

The Court properly dismissed Count I – which seeks a ruling that USCIS has unduly

delayed adjudication of all naturalization applications that have been pending without decision in

the New York District for at least 180 days – even as to individuals whose name check is not

currently pending.  The Court correctly held, *inter alia*, that the plaintiffs could not demonstrate

that USCIS had a duty to act on naturalization applications within the 180-day period advocated

by plaintiff, as required for them to have a cause of action pursuant to APA Section 706(1).  *See*

Aug. 7 Decision at 15:19-16:7.  In so holding, the Court properly concluded that *Norton v.*

*Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), limits the APA Section 706(1) cause of

action to circumstances where the agency action in question is "legally required."  Aug. 7

Decision at 15:21 (citing *Norton*, 542 U.S. at 63).  Here, far from being legally required,

plaintiffs' only basis for a *per se*, class-wide 180-day deadline is the "sense of Congress" statute,

---

[9] Plaintiffs do criticize the fact that USCIS must spend time addressing the information provided by the FBI in cases where the FBI has sent a positive name check response.  *See* Pl. Opening Mem. at 12.  Plaintiffs' criticism, however, is simply based on their challenge to the value of the FBI name check requirement.  *See id.*  They do not identify any respect in which they believe USCIS acts unreasonably with respect to positive responses from the FBI, if it is assumed – as the Court has ruled – that the FBI name check is mandatory and therefore it is not subject to challenge on the basis of a claimed lack of value.  *See id.*

8 U.S.C. § 1571(b); as the Government explained in its prior papers, it is well settled that "sense of Congress" provisions are merely aspirational. *See* Def. Opening Mem. at 49-50.  Indeed, Section 1571(b) is simply one of many statutory provisions, most relating specifically to naturalization, that reflect a congressional intent *not* to impose mandatory deadlines for naturalization adjudications but instead to address the length of application processing times by providing additional resources and restructuring agency processes.[10]  Thus, the Court properly held – even as to individuals for whom the FBI name check has been completed – that USCIS was not "legally required" to act within the 180-day period that plaintiffs demand.

Plaintiffs criticize this Court's conclusion that *Norton* requires plaintiffs to demonstrate that the statutory scheme imposes a duty to act "within some specific period of time."  Aug. 7 Decision at 16:1-2; Mot. at 7.  Contrary to plaintiffs' characterization of the Court's interpretation as "novel," *see* Mot. at 8, several other courts considering Section 706(1) claims relating to naturalization have read *Norton* the same way.  *See, e.g.*, *Saini v. Heinauer*, 552 F. Supp. 2d 974, 977 (D. Neb. 2008) (rejecting Section 706(1) claim concerning naturalization application because "a court only has jurisdiction to compel an agency to act within a certain time period under the APA when the agency is compelled by law to act within a certain time

_____

[10]*See* Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (Nov. 29, 1990) (removal of naturalization authority from judiciary to agency to reduce backlogs); Immigration Services and Infrastructure Improvements Act, Pub. L. No. 106-313, 114 Stat. 1262 (Oct. 17, 2000) (increasing funding, mandating agency reporting on backlogs, and announcing an "objective" of reducing backlogs to the point that within one year all immigration benefit applications will be concluded in 180-days); U.S. Troop Readiness, Veterans' Care, Katrina Recovery, and Iraq Accountability Appropriations Act, 2007, Pub. L. No. 110-28, tit. III, ch. 5, 121 Stat. 112, 143 (May 25, 2007) (providing funding to address backlogs connected with FBI name check, while requiring agency to submit a backlog elimination plan); Consolidated Appropriations Act, 2008, Pub. L. 110-161, Div. E, tit. IV, 121 Stat. 1844, 2067  (Dec. 26, 2007) (same). *See generall*y Def. Opening Mem. at 26-28.

period." (citation omitted)); *Omar v. Mueller*, 501 F. Supp. 2d 636, 640 (D. N.J. 2007) (rejecting Section 706(1) claim because "USCIS is not required to process a naturalization application or conduct an interview within a certain time period"); *Ibrahim v. Chertoff*, 529 F. Supp. 2d 611, 614 (E.D.N.C. 2007) (denying Section 706(1) and mandamus claims because applicants "do not have a right to have their application adjudicated within a specific time.").[11]  The Court's analysis properly applies *Norton*'s limitation of APA Section 706(1) to circumstances where Congress has imposed a "specific, unequivocal command," *Norton*, 542 U.S. at 63, and is consistent with the general principle that an APA 706(1) claim "entails an examination of any legislative mandate in the statute and the degree of discretion given the agency by Congress," *Cutler v. Hayes*, 818 F.2d 879, 897 (D.C. Cir. 1987).[12]

Moreover, plaintiffs fail to mention in their reconsideration motion that even if they were correct in their interpretation of *Norton*'s duty requirement – which they are not – Count I would still properly have been dismissed, even as to individuals whose FBI name check has been

---

[11] Although plaintiffs cite certain cases to the contrary, none of these cases is a naturalization case and none addresses the unique statutory scheme applicable to naturalization, such as Congress's adoption of 8 U.S.C. § 1447(b).  *See* Mot. at 9-11 (citing cases, all of which relate to other immigration benefits); *compare Saini*, 522 F. Supp. at 978-79 (noting that in light of Congress's inclusion of Section 1447(b), which provides for judicial review if an application has been pending 120 days from an examination, the Court would not judicially impose other timeframes on the process).  Moreover, none of these cases finds that the agency has a duty to act within the 180-day period of 8 U.S.C. § 1571(b).

[12] Notwithstanding plaintiffs' suggestion, *see* Mot. at 8, the Court did not state that only an *express* statutory deadline could impose the requisite duty on an agency, as opposed to a deadline inferrable from the structure of the statutory scheme and congressional intent. Accordingly, plaintiffs' lengthy discussion of the distinction between an "unlawfully withheld" claim, which requires an express statutory deadline, and an "unreasonable delay" claim, which they claim does not, *see* Mot. at 8-9, is beside the point.  Here, for the reasons discussed above, the statutory scheme makes clear that Congress did not intend such a deadline to exist.

completed, for independent reasons discussed in the Government's prior papers. First, plaintiffs'
challenge to the agency's policies, even if limited to the Surge Response Plan and the agency's
allocation of resources to the post-name-check period, is not directed at a failure to take
"discrete" action but rather is a "broad programmatic attack," prohibited by *Norton*. *Norton*, 542
U.S. at 64; *see* Def. Opening Br. at 39-40; Def. Reply Br. at 5-7. Second, plaintiffs' challenge to
USCIS's allocation of resources in response to the 2007 surge is also properly dismissed because
it does not challenge a *failure* by the agency to act, but rather *how* the agency is acting, as the
agency is adjudicating applications on an ongoing basis and taking steps to reduce the effects of
the surge. *See Norton*, 542 U.S. at 61; Def. Opening Br. at 39-40; Def. Reply Br. at 6-7. Third,
Count I is properly dismissed to the extent it seeks injunctive relief because *Heckler v. Day,* 467
U.S. 104 (1984), prohibits such a judicially imposed, class-wide deadline for adjudication, and to
the extent that Count I seeks declaratory relief, it should be dismissed for the reasons stated in
*A. L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 32 (1961). *See* Def. Opening Mem.
at 71-74. Finally, even if Count I were not dismissed for failure to state a claim, it would
nonetheless need to be dismissed on summary judgment, because the undisputed facts show the
reasonableness of USCIS's actions. *See* Def. Opening Mem. at 53-60.

      C.     <u>The Court Properly Dismissed Count II Pursuant to</u>
                <u>Pursuant to 8 U.S.C. § 1447(b) and APA Section 706(1)</u>

      The Court also properly dismissed Count II, even as limited to individuals whose FBI
name checks have now been completed. Count II is principally based on the 120-day period
contained in Section 1447(b), which the Court correctly held does not require "USCIS to act on
an application within any period of time." Aug. 7 Trans at 16:22-23; *see Bustamante v. Chertoff*,
533 F. Supp. 2d 373, 380 (S.D.N.Y. 2008) ("[N]othing in the 1990 Act [which includes Section

-15-

1447(b)] requires CIS to act on a naturalization petition within 120 days, or any other specified period of time"), *appeal docketed*, No. 08-0990-cv (2d Cir. Feb. 28, 2008). Instead, after 120 days, Section 1447(b) simply vests the Court with discretion to decide a naturalization application itself or to enter an "appropriate" order instructing USCIS how to proceed. *See* 8 U.S.C. § 1447(b); *Bustamante*, 533 F. Supp. 2d at 380. Under circumstances similar to those raised by the present case, courts have exercised their discretion not to impose strict deadlines but instead to direct USCIS simply to proceed as quickly as a feasible under all the circumstances.[13] This approach recognizes both that USCIS is already working to reduce naturalization processing times and that USCIS is processing naturalization applications on an ongoing basis. It also recognizes that a judicially imposed deadline would be unlikely to increase the overall pace of naturalization processing, but rather will likely force the agency to re-order the queue or divert agency resources from other critical agency functions, including other customer service or adjudicative functions, to favor these plaintiffs over others also awaiting naturalization decisions. The Court's August 7 dismissal of the complaint reflects these concerns.

To the extent that Count II is based not only on Section 1447(b) but also on APA Section 706(1) and 8 C.F.R. § 335.3, the Court nonetheless properly dismissed the claims. As an initial matter, even if the duty created by 8 C.F.R. § 335.3 would, in other contexts, be sufficient to

---

[13]*See Hani v. Gonzales*, No. 3:07-CV-517-S, 2008 WL 2026092, at *2 (W.D. Ky. May 8, 2008) (remanding with instructions to proceed "as expeditiously as practical once the results of their background checks are received"); *Antonishin v. Keisler*, No. 06 Civ. 2518, 2007 WL 2788841, at *4 (N.D. Ill. Sept. 20, 2007) (remanding and "declin[ing] to impose any particular deadline for adjudication of plaintiff's applications on remand"); *Shalabi v. Gonzales*, No. 4:06CV866, 2006 WL 3032413, at *1 (E.D. Mo. Oct. 23, 2006) (remanding "with instructions to make a determination as expeditiously as possible" after receiving an FBI name check response).

support an APA Section 706(1) claim,[14] plaintiffs' recently minted New Subclass – which consists of individuals whose application have been pending 120 days from a naturalization interview and whose FBI name checks have been completed – may not rely on the general cause of action created by APA Section 706(1), because these individuals are limited to the specific cause of action provided to them by Congress in Section 1447(b).  S*ee* Def. Opening Mem. at 46-47; Def. Reply Mem. at 3 n.2.[15]  More fundamentally, however, even if APA Section 706(1) applied to Count II notwithstanding the existence of the Section 1447(b) remedy, and even if 8 C.F.R. 335.3 is properly interpreted to create a mandatory duty to act within 120 days, that is only the beginning, and not the end, of the analysis.  The mere existence of a duty to act within a specific time, and, indeed, even a showing of an unreasonable failure to comply with such a duty, does not entitle the plaintiffs to relief under APA Section 706(1).  Instead, the Court must undertake a analysis of all the applicable circumstances in determining, in its equitable discretion, whether to compel the action the plaintiffs seek.  *See* Def. Opening Mem. at 53-60; *In re Barr Labs., Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991) ("[A] finding that delay is unreasonable

---

[14] The Court appears to have so held, notwithstanding the Government's explanation that 8 C.F.R. § 335.3 does not have the "force of law" in the sense that *Norton* used that term of art. *See* Def. Reply Mem. at 3-4.

[15]*See also* 5 U.S.C. § 702 (providing that there is no APA jurisdiction where "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought"); *id.* § 704 (provides that APA jurisdiction is limited to cases where "there is no other adequate remedy in a court"); *Hani*, 2008 WL 2026092, at *2 n.2 ("Because this court has jurisdiction over Group 1 Plaintiffs' naturalization applications pursuant to 8 U.S.C. § 1447(b), Group 1 Plaintiffs may not rely on general jurisdictional grants to obtain the relief they seek."); *Lahrar v. USCIS*, 485 F. Supp. 2d 705, 708 (E.D. Va. 2007) (holding that no APA jurisdiction exists in light of Section 1447(b)); *Antonishin*, 2007 WL 2788841, at *5 (same); *Ahmadi v. Chertoff*, No. C 07-03455 (WHA), 2007 WL 3022573, at * 6-*7 (N.D. Cal. Oct. 15, 2007) (same).

does not, alone, justify judicial intervention.").[16]  Any relevance 8 C.F.R. § 335.3 may have to

the analysis as a reflection of agency intentions in 1991 (when the regulation was adopted as an

interim rule) or 1995 (when it was adopted as a final rule) is outweighed by countervailing

factors: (1) that previously completed, statutorily mandated FBI name checks – which the Court

has held are required by a statute post-dating and superceding 8 C.F.R. § 335.3, *see* Aug. 7

Decision at 17:15-18:6 – may have contributed to the processing times for many members of the

New Subclass, (2) that USCIS is not refusing to act but rather is, in good faith, deciding pending

applications on an ongoing basis, and (3) that USCIS has adopted the Surge Response Plan to

improved processing times, with the awareness of Congress, *see* Aytes Dep. at 194:15-20;

CIS006277-82, and with significant success, *compare* CIS006240 (January 2008 estimate of 16

to 18 months), *with* Aytes Dep. at 135:20-136:2 (July 2008 30(b)(6) testimony that approximate

average processing times were 10.9 months if cases waiting for FBI name checks were included

and 10.4 or 10.5 months if cases waiting for FBI name checks or otherwise deemed in "active

suspense" were excluded).  Although plaintiffs seek to impose their own version of a "Surge

Response Plan," reallocating resources to their benefit at the expense of others applicants or

---

[16] Although plaintiffs cite *Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999), to suggest that the Court lacks discretion concerning whether to issue an injunction, *see* Mot. at 9, in fact *Forest Guardians* limited its holding to circumstances where the deadlines in question were *imposed by Congress*.  *See Forest Guardians*, 174 F.3d at 1190 ("[W]hen Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion.").  Therefore, *Forest Guardians* has no relevant to the present motion, where the Court has ruled that only a regulation – 8 C.F.R. § 335.3 – and not a statute imposes the requisite duty on USCIS.  In any event, the *Forest Guardians* rule has never been adopted by the Second Circuit and is contrary to the rule followed by the D.C. Circuit, which this Court should follow if it reaches this issue.  *See In re Barr Labs., Inc.*, 930 F.2d at 73 ("Though we agree with Barr that FDA's sluggish pace violates a statutory deadline, we conclude that this is not an appropriate case for equitable relief.").

-18-

agency business, plaintiffs' desire to move ahead in the queue does not justify the relief sought. *See In re Barr Labs., Inc.*, 930 F.2d at 76 ("In short, we have no basis for reordering agency priorities.").

In any event, as described above with regard to Count I, which seeks to impose a 180-day adjudication rule, the relief sought in Count II by the New Subclass of applicants whose applications have been pending 120 days from a naturalization interview and whose FBI name checks have cleared is also barred by the Supreme Court's decision *Heckler v. Day*. *See* Def. Opening Mem. at 71-74. That decision prohibits judicially imposed, class-wide injunctions where Congress is aware of the length of application processing times but has chosen not to impose mandatory statutory deadlines. *See Heckler,* 467 U.S. at 119; Def. Opening Mem. at 71-74. The existence of 8 C.F.R. § 335.3 does not change the *Heckler* analysis: In *Heckler*, the agency had adopted a policy setting the very adjudication deadline that the *Heckler* district court thereafter imposed by injunction. *See Heckler,* 467 U.S. at 122, 124, 132 (Marshall, J., dissenting). Notwithstanding the agency's adoption of this deadline, the Court held that the key question was whether *Congress* had chosen to impose such a deadline on the agency. *See Heckler,* 467 U.S. at 119 (emphasizing the "intention of Congress"). Because this Court has properly held that the applicable statute, 8 U.S.C. § 1447(b), does not mandate agency action by a particular date, *see* Aug. 7 Decision at 16:19-23, and indeed because a long history of Congressional legislation in the area demonstrates Congress's intention *not* to address backlogs through the imposition of deadlines, *see supra* n.9; Def. Opening Mem. at 26-32, *Heckler* prohibits the Court from adopting such a class-wide deadline. Further, to the extent that Count II seeks a declaratory judgment in addition to an injunction, it should be dismissed, in light of

USCIS's current efforts to improve processing times pursuant to the Surge Response Plan, for

the reasons stated in *A. L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 32 (1961). *See*

Def. Opening Mem. at 74.

**III.    PLAINTIFFS' IMPLICIT MOTION FOR CERTIFICATION
OF A NEW CLASS AND NEW SUBCLASS SHOULD BE DENIED**

Finally, to the extent that the Court does not simply deny the motion for reconsideration

and adhere to its decision dismissing the complaint, the Court should reject plaintiffs' implicit

request – unsupported by any argument – for certification of (*i*) the New Class, consisting of the

subset of plaintiffs' initially proposed class whose applications have been pending 180 days and

whose FBI name checks have been completed, and (*ii*) the New Subclass, consisting of the

subset of the New Class whose applications have been pending for 120 days since a

naturalization interview without decision.  Plaintiffs did not request certification of these classes

in their motion for class certification, and may not use this motion for reconsideration to

"advance different theories not previously argued."  *Stephens*, 547 F. Supp. 2d at 280; *see also*

*Brown*, No. 04 Civ. 2450 (SAS), 2005 WL 1423241, at *1 (movant "may not advance new facts,

issues or arguments").  Because the Court could not "overlook" a matter that was not presented

to it on the underlying motion, *see, e.g.*, *Range Road Music, Inc. v. Music Sales Corp.*, 90

F. Supp. 2d 390, 392-93 (S.D.N.Y. 2000), and because Rule 6.3 has been interpreted "to prevent

the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."

*Stephens*, 547 F. Supp. 2d at 280 (internal quotation marks omitted) (ellipsis in original), the

request for certification should be denied.

In any event, if the Court considers plaintiffs' implicit request for certification of the

New Class and New Subclass on the merits, it should deny the request.  Plaintiffs make no

argument in their reconsideration motion in support of certification of the New Class and New Subclass and so, presumably, rely solely on the arguments they made in support of the previously proposed class and subclass. However, because the New Class and the New Subclass now exclude individuals with pending FBI name checks – individuals who were included within the class and subclass previously advocated by plaintiffs – plaintiffs have removed a principal "common" issue from their claims. Now, in order to address each class members' claim of "unreasonable delay," the Court will not be able to rely on plaintiffs' arguments about the validity of the FBI name check, but will need to delve into the specific causes of the length of each applicant's processing time, including both (i) the extent to which a formerly pending FBI name check contributed to an applicant's processing time and (ii) the extent to which the applicant prolonged his or her own processing time through his or her own actions or inaction. *See Reddy v. CFTC*, 191 F.3d 109, 120 (2d Cir. 1999) (holding that an "unreasonable delay" claim requires consideration of the "complexity" of the matter, as well as "the extent to which the [individual challenging alleged delay] participated in delaying the proceeding").[17]

    Thus, although the Court indicated in its August 7 decision that it believed some version of plaintiffs' then-proposed class and subclass (which lacked plaintiffs' newly proposed limitation to individuals whose FBI name checks have been completed) would be certifiable, *see* Aug. 7 Decision at 19:12-16, notwithstanding the Government's arguments to the contrary, s*ee*

_____

    [17] Indeed, even after adjudication of class members' applications, the timeframe in which class members' oath ceremonies can be scheduled will vary: Although applicants residing in the Southern District of New York may be naturalized through administrative oath ceremonies scheduled at the discretion of USCIS, the United States District Court for the Eastern District New York generally requires naturalization oaths to be judicially administered for residents of the that district – who are included among plaintiffs' "New Class" – and, therefore, USCIS's ability to control the scheduling of oath ceremonies for those individuals is more limited.

Def. Reply Mem. at 76-86, the Court should reach a different conclusion as to the New Class and New Subclass, because of the heightened individualized factors resulting from the exclusion of applicants with pending FBI name checks.  Thus, in addition to the bases for denying class certification previously identified by the Government, *see id.*, the heightened importance of individualized factors in the decision of the claims of plaintiffs' newly proposed New Class and New Subclass require denial of class certification for lack of typicality, *see* Fed. R. Civ. P. 23(a)(3); Def. Reply Mem. at 80-81, and because injunctive relief will not be appropriate the class as a whole, *see* Fed. R. Civ. P. 23(b)(2); Def. Opening Mem. at 83-85.  *See also Roshandel v. Chertoff*, No. C07-1739 (MJP), 2008 WL 2275558, at *2 (W.D. Wash. June 3, 2008) (although certifying a class as to naturalization applicants with pending FBI name checks, refusing to certify class as to individuals claiming their applications were delayed "for some other reason).

**CONCLUSION**

For the foregoing reasons and all the reasons stated in the Government's briefing on the

underlying motions, the Government respectfully requests that the Court deny plaintiffs' motion

for reconsideration.

Dated:        September 3, 2008
              New York, New York

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York

                    By:    /s/ Robert William Yalen
                              TOMOKO ONOZAWA
                              KIRTI VAIDYA REDDY
                              ROBERT WILLIAM YALEN
                              Assistant United States Attorneys
                              86 Chambers Street
                              New York, New York  10007
                              Tel.:  (212) 637-2721 (Onozawa)
                              Tel.:  (212) 637-2751 (Reddy)
                              Tel.:  (212) 637-2722 (Yalen)
                              Fax:  (212) 637-2687
                              E-mail:  tomoko.onozawa@usdoj.gov
                              E-mail:  kirti.reddy@usdoj.gov
                              E-mail:  robert.yalen@usdoj.gov